Filed 12/18/13

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| AUGUSTINE HONG et al., | B246945 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC487990) |
| v. | |
| CJ CGV AMERICA HOLDINGS, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge. Affirmed.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, Ekwan R. Rhow and David I. Hurwitz; Quinn Emmanuel, Urquhart & Sullivan, LLP and Daniel H. Bromberg for Defendants and Appellants.

Browne George Ross, Eric M. George, Benjamin D. Scheibe and Lauren Woodland for Plaintiffs and Respondents.

---

[*]    Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part III (D).

# I. INTRODUCTION

Defendants, CJ CGV America Holdings, Incorporated (CJ CGV America), Joon Hwan Choi, Theodore Kim and Sang Heum Cho, appeal from an order denying their motion to compel arbitration. Plaintiffs, Augustine Hong[1], Michael Hong and Nae Young Chung, sued defendants for fiduciary duty breach. Defendants moved to compel plaintiffs to arbitrate pursuant to an arbitration clause in a stock purchase agreement. Plaintiffs opposed the motion, arguing, among other things, defendants waived the right to arbitrate by their conduct in this case and filing a second suit against Augustine. The trial court rejected defendants' argument the waiver by litigation conduct defense should have been decided by an arbitrator. The motion to compel arbitration was denied.

In the published portion of this opinion, we discuss defendants' contention that the issue of waiver by litigation conduct should have been decided by an arbitrator, not the trial court. California statutory and decisional authority recognizes the issue of waiver by litigation conduct is ordinarily resolved by the trial court, not an arbitrator. (Code Civ. Proc., § 1281.2; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 982.) But defendants assert as this case is subject to the Federal Arbitration Act, the waiver by litigation conduct issue should have been decided by the arbitrator. Defendants rely on the following language appearing in *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 84 (*Howsam*): "So, too, the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.' *Moses H. Cone Memorial Hospital* [(1983) 460 US 1,] 24-25." Based upon the near-unanimous analysis of federal and state courts, we conclude the foregoing language in *Howsam* does not apply here. The trial court correctly ruled it, rather than an arbitrator, should decide the merits of the waiver by litigation conduct defense to arbitration asserted by plaintiffs. We affirm the order denying the motion to compel arbitration.

---

[1] Because of a similarity in surnames, we will refer to Augustine Hong by his first name for clarity's sake. No disrespect is intended.

## II. BACKGROUND

### A. The Second Amended Complaint

Plaintiffs filed their original complaint on July 9, 2012 against: CJ CGV America, Mnet Media Corporation (Mnet); CJ Corporation; CJ E&M Corporation; Mi-Kyung Lee; Joon Hwan Choi; Mr. Kim; and Mr. Cho. On August 29, 2012, plaintiffs filed their first amended complaint. On September 19, 2012, defendants filed a demurrer to the first amended complaint. Defendants argued plaintiffs could not proceed with a direct lawsuit. The demurrer was sustained on October 19, 2012 with leave to amend. On October 29, 2012, plaintiffs filed their second amended complaint, the operative pleading, as a derivative lawsuit.

According to the second amended complaint, plaintiffs are shareholders of ImaginAsian Entertainment, Incorporated (ImaginAsian). Mr. Chung and Mr. Hong are common shareholders and Augustine is one of the largest common shareholders. Plaintiffs are residents of New Jersey. ImaginAsian is a multi-media company operating as a broadcast television network in many markets in the United States, catering to Asian-American and South Asian-American culture and entertainment. ImaginAsian is a corporation existing under Delaware law.

Korean conglomerate CJ Corporation expressed an interest in investing in ImaginAsian. CJ CGV America and Mnet are affiliates of CJ Corporation. CJ CGV America is a corporation existing under California law. On August 14, 2009, plaintiffs, Mnet and CJ CGV America entered into a contract. The August 14, 2009 stock arrangement is entitled, "ImaginAsian Entertainment, Inc. Series A Preferred Stock Purchase Agreement" (purchase agreement). The stock purchase agreement contains the arbitration clause at issue in this appeal. Mnet and CJ CGV America received preferred stock. As a result, Mnet and CJ CGV America secured a slight majority interest in ImaginAsian. Plaintiffs became minority shareholders. Mnet and CJ CGV America secured the authority to select three of the five directors of ImaginAsian. Mr. Choi, who

3

is a corporate officer, and Mr. Kim are two of the directors. Mr. Choi, Mr. Kim and Mr. Cho are residents of California. For a two-year period, Mnet and CJ CGV America were given the ability to make additional investments in ImaginAsian under certain terms and conditions which they exercised. Plaintiffs were offered the ability to purchase additional shares, but did not, further reducing their percentage ownership interest.

After this two-year period elapsed, Mnet and CJ CGV America indicated an intent to invest additional monies into ImaginAsian. But the offer was at a per share price below what plaintiffs believed was the actual value of ImaginAsian. Defendants' intended price would be set by ImaginAsian's directors' board, which CJ Corporation, Mnet and CJ CGV America controlled. ImaginAsian retained an unidentified valuation firm to assess its value. However, defendants sought to influence the valuation firm to make a low value that would favor them. The low valuation would be at the expense of plaintiffs and other common stock shareholders.

The second amended complaint alleges defendants had a fiduciary duty to engage fairly with the minority shareholders. Plaintiffs allege: defendants valued ImaginAsian at an artificially low price; this would allow defendants to acquire a larger ownership interest; defendants forced ImaginAsian to devote an increasing percentage of its programming to Korean language programs; and this programming would benefit defendants. ImaginAsian's stated mission was to serve all Asian-American groups and Americans interested in Asian culture and entertainment. Plaintiffs asserted these fiduciary duty breaches cost ImaginAsian over $9.8 million.

### B. Defendants' Motion To Require Plaintiff To Furnish Bond

On November 9, 2012, 11 days after the second amended complaint was filed, defendants moved to require plaintiffs to furnish a bond pursuant to Corporations Code section 800. Defendants argued there was no reasonable possibility plaintiffs' lawsuit would benefit ImaginAsian or its shareholders. Defendants asserted without a new influx of funds, they were forced to take a $12 million loan. Defendants maintained they

4

complied with the programming and licensing agreement ("licensing agreement") regarding the amount of Korean language programming. Defendants requested that plaintiffs be required to post a $50,000 bond to cover the probable litigation expenses in the defense of the action. Defendants relied upon two declarations. The first declaration was executed by David I. Hurwitz, counsel for defendants. Mr. Hurwitz indicated he had been extensively involved in shareholder derivative litigation for over 20 years in various state and federal courts. Mr. Hurwitz indicated the fees which would be incurred by defendants "in connection with this action" would exceed $50,000. Mr. Hurwitz declared that defendants had successfully demurred to the first amended complaint and anticipated demurring to the second amended complaint as well.

In addition, Mr. Hurwitz described the extensive discovery that had occurred since the filing of the complaint: "Defendants have had to respond to Plaintiffs' request for production of documents and electronically stored information, including more than sixty separate requests to CJ CGV alone, and are in the midst of document collection efforts, and CJ CGV has responded to Plaintiffs' First Set of Special Interrogatories." In addition, Mr. Hurwitz declared, "Plaintiffs have noticed the deposition of one of the individual defendants, Theodore Kim, and given the number of parties and issues, the cost of preparing for, taking and defending the depositions alone would exceed fifty thousand dollars." Finally, Mr. Hurwitz further described both the past and anticipated litigation, "Counsel for co-defendants (who reside[s] in China) has already filed a successful motion to quash service on behalf of its clients. If the plaintiffs make further attempts at service and the Court finds that the Korean resident defendants are properly in the action, that would significantly increase the cost of litigation. [¶] . . . Should the Second Amended Complaint survive a demurrer, Defendants would move for summary judgment and/or summary adjudication, all of which could increase the amount of defense costs well beyond the statutory maximum, not to mention the aggregate expense if the action was tried."

The second declaration was filed by Sang Heum Cho, the chief operating officer of ImaginAsian. Much of the declaration relates to the merits of the litigation. However,

5

one part of Mr. Cho's declaration relates to a separate agreement between the parties. Mr. Cho explained, "Concurrently with the Stock Purchase Agreement, ImaginAsian, entered into a Programming and Graphics License Agreement with Mnet for a total of 1,545 hours of Korean language programming to be delivered to ImaginAsian on a weekly basis over the license period." The licensing agreement, which contains no arbitration clause, was negotiated and signed by Augustine.

On January 2, 2013, plaintiffs filed their opposition. Plaintiffs argued increased Korean programming would negatively affect ImaginAsian's outside interests. ImaginAsian's outside interests had advocated programming made in the United States by Asian Americans. Plaintiffs asserted ImaginAsian's programming was 80 to 90 percent Korean programming. Increased Korean programming also negatively affected distribution because foreign language channels were not offered to as many subscribers. Plaintiffs contended defendants attempted to seize a larger ownership interest at an unfair price and wanted to enjoin any future offering. Plaintiffs filed three declarations discussing the litigation's merits totaling 28 pages plus 94 pages of written exhibits.

On January 8, 2013, defendants filed their reply. Defendants argued they had increased subscribers and revenue and invested considerable resources for Asian-American programming. Defendants asserted they never made the offering to any shareholders. On January 15, 2013, the trial court denied defendants' motion to require the posting of a bond. The trial court ruled insufficient evidence existed to require plaintiffs to furnish a bond.

## C. CJ CGV America's Complaint Against Augustine

On December 20, 2012, CJ CGV America filed a separate action against Augustine. CJ CGV America alleged fraud, negligent misrepresentation and breach of contract against Augustine. CJ CGV America alleged Augustine misrepresented the number of households served by ImaginAsian's television network. CJ CGV America alleged it relied on this representation in signing the purchase agreement.

## D. Defendants' Motion To Compel Arbitration

On January 18, 2013, defendants filed a motion to compel arbitration.  Defendants contended the arbitration clause in the purchase agreement signed by Augustine with CJ CGV America and Mnet applied.  Defendants argued, "In opposing defendants' motion to require plaintiffs to furnish a bond as security for their derivative claims, plaintiffs made clear that they had essentially transformed their complaint from one of seeking an injunction against an offering to one seeking damages based on alleged diminution in the value resulting from defendants' having allegedly forced ImaginAsian to broadcast excessive Korean-language television programs."  Defendants asserted a substantial part of the money in consideration for the purchase agreement was for more than 1,500 hours of Korean language programming in the licensing agreement.  Defendants argued the licensing agreement was a material inducement for them to enter the purchase agreement.

The purchase agreement's arbitration clause is located at section 9.17:  "Any claim or controversy arising out of or relating to this Agreement must be submitted and settled as set forth in this Section 9.17.  If any party to this Agreement alleges that another party to this Agreement has breached any of the terms of the Agreement, then the party alleging breach will inform the other parties of such breach in writing.  Upon receipt of such notice, the allegedly non-performing party will have 10 days to cure the alleged breach."  In the event the dispute is not yet resolved, the dispute is to be submitted to non-binding mediation in Los Angeles, California.  If mediation does not resolve the dispute, section 9.17(c) states:  "[T]he dispute will be submitted to binding arbitration in Los Angeles, California, before a sole arbitrator. . . .  Except as provided by the Rules [and Procedures of the Judicial Arbitration & Mediation Services] and this Section 9.17, arbitration shall be the sole, exclusive, and final remedy for any dispute under this Agreement."

On January 28, 2013, plaintiffs filed their opposition.  Plaintiffs argued the claims asserted were not arbitrable because most of the defendants were not signatories.  Further, plaintiffs asserted the claims did not arise out of or relate to the purchase

7

agreement. Also, plaintiffs contended defendants waived their right to arbitration by filing a demurrer, bond motion, and separate action against Augustine over the span of six months. Even if certain claims were subject to arbitration, plaintiffs argued the court should deny the motion to avoid inconsistent results and duplicative proceedings. Plaintiffs also asserted defendants failed to provide statutorily required notice of the motion. As noted, the licensing agreement contains no arbitration clause.

On February 1, 2013, defendants filed their reply. Defendants reiterated their arguments in their motion to compel arbitration. The hearing was held on February 7, 2013, at which the trial court denied defendants' motion to compel arbitration. Plaintiffs issued notice of the ruling on February 8, 2013. According to the settled statement on appeal, the trial court denied the motion for all the reasons set forth in plaintiffs' opposition. Plaintiffs issued notice of entry of judgment on February 13, 2013. Defendants subsequently appealed the order.

## III. DISCUSSION

### A. Overview

An order denying a motion to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a); *Valentine Capital Asset Management, Inc. v. Agahi* (2009) 174 Cal.App.4th 606, 612, fn. 5.) There is no dispute concerning the language of the arbitration clause. We accordingly review de novo the applicability of the arbitration clause. (See *Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 837; *EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1320.) We review the trial court's finding of arbitration waiver for substantial evidence. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 ["Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by substantial evidence, is binding on the appellate court."] (*St. Agnes*); *Engalla v.*

8

*Permanente Medical Group, Inc., supra,* 15 Cal.4th at p. 983; *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319.)

Code of Civil Procedure section 1281.2, subdivision (a) provides in pertinent part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for the revocation of the agreement. . . ." Under both the Federal Arbitration Act and state law, waivers of the right to arbitrate are not lightly inferred. (*St. Agnes, supra,* 31 Cal.4th at p. 1195, citing *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 782.) Thus, any doubts concerning waiver should be resolved in favor of arbitration. (*St. Agnes, supra,* 31 Cal.4th at p. 1195; see *Moses H. Cone Memorial Hospital v. Mercury Construction Corp., supra,* 460 U.S. at pp. 24-25 (*Moses H. Cone*).)

In *St. Agnes*, our Supreme Court adopted a multi-factor test for determining whether a party has waived the right to arbitrate: "'In determining waiver, a court can consider "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party."'" (*St. Agnes, supra,* 31 Cal.4th at p. 1196, quoting *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992; accord *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30-31; *Fisher v. A.G. Becker Paribas Inc.* (1986) 791 F.2d 691, 694 ["A party seeking to prove

9

waiver of a right to arbitrate must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."].)

Under both federal and state law, whether litigation results in prejudice to the party opposing arbitration is critical in waiver determinations. (*St. Agnes, supra,* 31 Cal.4th at p. 1203; *Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 340; *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 16.) Our Supreme Court explained: "Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses. [Citations.] [¶] Rather, courts assess prejudice with the recognition that California's arbitration statutes reflect "'a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution'" and are intended "'to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.'" [Citation.] Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration. [¶] For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence [citation]." (*St. Agnes, supra,* 31 Cal.4th at pp. 1203-1204; see *O'Donoghue v. Superior Court* (2013) 219 Cal.App.4th 245, 264-265.)

Here, plaintiffs argued defendants waived arbitration by: failing to plead a right to arbitration as a basis for the demurrer (which by itself is insufficient to support a waiver finding); participating substantially in the discovery process; filing a case management statement declining to submit to voluntary binding arbitration; and CJ CGV America filing a separate lawsuit against Augustine for misrepresentations inducing it to sign the

10

purchase agreement, rather than initiating arbitration. Further, plaintiffs argued defendants waived arbitration by filing a Corporations Code section 800 motion. If successful, the Corporations Code section 800 motion would have required plaintiffs to post a bond to cover potential costs incurred in the action. Also, plaintiffs argue the bond motion: was supported by a declaration detailing the substantial law and motion and discovery proceedings that had occurred; used the word "action" to describe the forum where the potential litigation costs would be incurred; and described the anticipated summary judgment or adjudication motion. Plaintiffs argue they were required to file a lengthy opposition to the bond motion. And plaintiffs argue that much of their opposition consisted of declarations and evidence directly pertinent to the merits of their claims. Plaintiffs argue all of these factors taken together constitute substantial evidence defendants waived their right to compel arbitration.

### B. The Trial Court Correctly Ruled It, Rather Than The Arbitrator, Must Decide The Waiver By litigation Conduct Issue

#### 1. The present case is subject to the Federal Arbitration Act

Defendants argue that the arbitration agreement in our case is subject to the Federal Arbitration Act because it involves interstate commerce. (9 U.S.C. § 2 ["transaction involving commerce"]; *Allied-Bruce Terminex Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 277 ["word 'involving,' like 'affecting,' signals an intent to exercise Congress's commerce power to the full"].) We agree. The contracts at issue arise in commerce for purposes of the Federal Arbitration Act: ImaginAsian, a Delaware corporation, has operated a television network in the United States; the programming is directed towards "all Asian-American and South Asian-American groups in the United States . . ."; Mnet is a nationwide television network which had entered into a "carriage" agreement with Comcast Corporation; the alleged fiduciary duty breach arises in part out of contractual duties resulting from a 2010 contract between Comcast Corporation and

11

NBC Universal concerning increased Asian programming; negotiations involving foreign nationals and Congressional employees led to the Comcast Corporation and NBC Universal agreement; and both individual plaintiffs and defendants reside in different states. (*Coleman v. National Movie-Dine, Inc.* (E.D.Penn. 1978) 449 F.Supp. 945, 947-948; *Network Cinema Corp. v. Glassburn* (S.D.N.Y. 1973) 357 F.Supp. 169, 170-171.)

2. The analysis in *Howsam* relied upon by defendants

Defendants contend under the Federal Arbitration Act the waiver issue should have been decided by an arbitrator and not the trial court. As noted, defendants rely on language appearing in *Howsam, supra*, 537 U.S. at page 84. The language in *Howsam, supra*, 537 U.S. at page 84 finds its basis in *Moses H. Cone*, *supra*, 460 U.S. at pages 24-25.

We begin by analyzing the facts and language in *Moses H. Cone*, *supra*, 460 U.S. at pages 24-25. The dispute at issue was between a hospital, the plaintiff, and the defendant, a construction contractor. The construction contact contained an arbitration clause. (*Id*. at p. 5.) In *Moses H. Cone*, the hospital filed suit in state court. The high court described the state court action thusly: "[T]he Hospital filed an action on the morning of October 8 in the Superior Court of Guilford County, [North Carolina], naming Mercury and the Architect as defendants. The complaint alleged that Mercury's claim was without factual or legal basis and that it was barred by the statute of limitations. It alleged that Mercury had lost any right to arbitration under the contract due to waiver, laches, estoppel, and failure to make a timely demand for arbitration. The complaint also alleged various delinquencies on the part of the Architect. As relief, the Hospital sought a declaration that there was no right to arbitration; a stay of arbitration; a declaration that the Hospital bore no liability to Mercury; and a declaration that if the Hospital should be found liable in any respect to Mercury, it would be entitled to indemnity from the Architect. The complaint was served on Mercury on October 9." (*Id*. at p. 7.) The defendant immediately served an arbitration demand. After further

12

skirmishing in the state court, the defendant filed a diversity action in federal court. The district court stayed the federal court suit pending resolution of the state court litigation as both suits involved issues of arbitrability. (*Ibid.*)

The *principal* issue addressed by the high court was whether the district court could stay the federal suit out of deference to the parallel litigation brought in state court. (*Moses H. Cone*, *supra*, 460 U.S. at p. 13.) In addressing what the high court characterized as this principal question, it engaged in a weighing process involving abstention principles. According to the high court, the pertinent factors to be weighed were identified in *Colorado River Water Conservation District v. United States* (1976) 424 U.S. 800, 813-820 (*Colorado River*). (*Moses H. Cone*, *supra*, 460 U.S. at p. 13.) Apart from the factors expressly described in *Colorado River*, the high court identified an additional consideration--federal statutory law (the Federal Arbitration Act) provided the rule for decision on the merits. (*Moses H. Cone*, *supra*, 460 U.S. at pp. 24-25.) The high court then engaged in a generalized discussion concerning the duty to arbitrate.[2] The

---

[2] The relevant discussion concerning arbitration was as follows: "The basic issue presented in Mercury's federal suit was the arbitrability of the dispute between Mercury and the Hospital. Federal law in the terms of the Arbitration Act governs that issue in either state or federal court. Section 2 is the primary substantive provision of the Act, declaring that a written agreement to arbitrate 'in any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2. Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. In *Prima Paint Corp. v. Flood & Conklin Mfg. Corp.,* 388 U.S. 395 (1967), for example, the parties had signed a contract containing an arbitration clause, but one party alleged that there had been fraud in the inducement of the entire contract (although the alleged fraud did not go to the arbitration clause in particular). The issue before us was whether the issue of fraud in the inducement was itself an arbitrable controversy. We held that the language and policies of the Act required the conclusion that the fraud issue was arbitrable. *Id.,* at 402-404. Although our holding in *Prima Paint* extended only to the specific issue presented, the Courts of Appeals have since consistently concluded that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. We agree. The Arbitration Act

13

high court, as part of that weighing process, made the following observation, "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of *waiver, delay, or a like defense to arbitrability.*" (*Moses H. Cone*, *supra*, 460 U.S. at pp. 24-25, fn. omitted; italics added.) It is this language concerning "'waiver, delay, or a like defense to arbitrability'" that is repeated in *Howsam* and defendants rely upon. Of consequence is the omitted footnote in the quoted language from *Moses H. Cone.* The omitted footnote lists a series of cases which are illustrative of the scope of the duty to arbitrate. (*Id*. at p. 25, fn. 31.) One of the cases cited in footnote 31 involved the issues of waiver of the right to arbitrate based upon participation in the district court litigation. (*Ibid*.) That case was *Germany v. River Terminal R. Co.* (6th Cir. 1973) 477 F.2d 546, 547. The Sixth Circuit panel decided the issue of whether there was waiver because of a litigant's participation in the district court proceedings. (*Ibid*.) The Court of Appeals held the litigant did not waive the right to arbitrate by participating in the district court proceedings. (*Ibid*.)

As noted, defendants rely on *Howsam*, *supra*, 537 U.S. at page 84. *Howsam* involves the timeliness of commencing arbitration proceedings before the National Association of Securities Dealers. The National Association of Securities Dealers by rule required a submission to arbitration occur within six years from the occurrence giving rise to the dispute. (*Id.* at p. 81.) The defendant, a brokerage house, upon receipt of the submission to arbitration, filed suit in federal court. The defendant contended the issue of whether the dispute was timely submitted to arbitration within the six-year limitation period was to be decided by the arbitrator, not a court. (*Id.* at p. 82.)

---

establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." (*Moses H. Cone*, *supra*, 460 U.S. at pp. 24-25; fns. omitted.)

14

The United States Supreme Court drew a distinction between a "gateway" issue such as arbitrability and a dispute's merits. The high court described this distinction as follows: "Linguistically speaking, one might call any potentially dispositive gateway question a 'question of arbitrability,' for its answer will determine whether the underlying controversy will proceed to arbitration on the merits. The Court's case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase 'question of arbitrability' has a far more limited scope. See [*First Options of Chicago, Inc. v. Kaplan* (1995)] 514 U.S. [938,] 942. The Court has found the phrase applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." (*Howsam, supra*, 537 U.S. at pp. 83-84.)

The high court continued: "Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide. See [*First Options of Chicago, Inc. v. Kaplan*, *supra*, 514 U.S.] at [pages] 943-946 (holding that a court should decide whether the arbitration contract bound parties who did not sign the agreement); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546-547 (1964) (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation). Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court. See, *e.g., AT & T Technologies* [(1986) 475 U.S. 643,] 651-652 (holding that a court should decide whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241-243 (1962) [overruled on a different point in *Boys Markets, Inc. v. Retail Clerk's Union* (1970) 398 U.S. 235, 250, fn. 18] (holding that a court should decide whether a clause providing for arbitration of various 'grievances' covers claims for damages for breach of a no-strike agreement)." (*Howsam*, *supra*, 537 U.S. at p. 84.)

15

In the next paragraph of *Howsam*, the high court identified other gateway issues which an arbitrator decides. The high court explained the phrase "question of arbitrability" is inapplicable in circumstances where parties would likely expect that an arbitrator would decide the gateway matter. For example, a dispute's procedural question which bears "on its final disposition" is presumptively for resolution by an arbitrator. As an example as an issue reserved for the arbitrator, the high court cited *John Wiley & Sons, Inc. v. Livingston*, *supra,* 376 U.S. at page 557 (*John Wiley*). (*Howsam*, *supra*, 537 U.S. at p. 84.) *John Wiley* held an arbitrator should decide whether the first two steps of a grievance procedure, which were prerequisites to arbitration, had been completed. (*John Wiley*, *supra*, 376 U.S. at pp. 556-558.) In *Howsam*, after discussing the holding in *John Wiley*, the high court stated: "So, too, the presumption is that the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability.' *Moses H. Cone Memorial Hospital, supra,* at 24-25. Indeed, the Revised Uniform Arbitration Act of 2000 (RUAA), seeking to 'incorporate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act],' states that an 'arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled.' RUAA § 6(c), and comment 2, 7 U.L.A. 12-13 (Supp. 2002). And the comments add that 'in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.,* whether prerequisites such as *time limits,* notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.' *Id.,* § 6, comment 2, 7 U.L.A., at 13 (emphasis added)." (*Howsam*, *supra*, 537 U.S. at pp. 84-85.) Defendants rely on the foregoing authority to support their contention an arbitrator must decide whether they waived the right to arbitrate.

16

### 3. *Howsam* did not require an arbitrator decide the waiver
### by litigation conduct issue in this case

#### a. the waiver by litigation issue was not present in *Howsam*
#### nor in the case it relied upon, *Moses H. Cone*

We are unpersuaded that *Howsam, supra*, 537 U.S. at page 84 required the arbitrator to decide the issue of waiver by litigation conduct in this case. To begin with, the application of *Moses H. Cone* and *Howsam* to our case is highly problematic. Neither case addresses our issue--engaging in litigation for such a duration and manner as to waive the right to later seek to arbitrate. *Moses H. Cone, supra,* 460 U.S. at pages 13-26 involves the *Colorado River* weighing process in the context of an abstention dispute. While doing so, the high court used the "waiver, delay, or a like defense to arbitrability language" in a generalized discussion of federal issues raised by that case. We detailed that general discussion in footnote 2, *infra*. As noted, footnote 31 of *Moses H. Cone*, *supra*, 460 U.S. at page 25 lists examples of the application of waiver issues. One of those cases, *Germany v. River Terminal R. Co.*, *supra*, 477 F.2d at page 547 involved a district and appellate court deciding an issue of waiver by litigation conduct issue. *Howsam, supra,* involved a classic statute of limitations issue—whether the arbitration submission was initiated within a six-year statute of limitations. (*Howsam, supra,* 537 U.S. at p. 81.) Neither case involves whether the right to arbitrate is waived by participation in litigation. Thus, *Moses H. Cone* and *Howsam* are not controlling authority given the issue in our case—waiver of the right to arbitrate based upon prejudicial participation in litigation.

The United States Supreme Court has repeatedly emphasized that its decisions are not controlling authority for propositions not considered by it in the case. (*Landgraf v. USI Film Products* (1994) 511 U.S. 244, 265 ["[T]he 'maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in

17

which those expressions are used.'"]; *R.A.V. v. City of St. Paul* (1992) 505 U.S. 377, 386, fn. 5 [it is "contrary to all traditions of our jurisprudence to consider the law on this point conclusively resolved by broad language in cases where the issue was not presented or even envisioned"].) The waiver by litigation conduct issue was not directly present in either *Moses H. Cone* or *Howsam.* They are not controlling authority in our case.

      b.  persuasive federal appellate court decisions holding issues of waiver
      by litigation conduct are decided by a court, not an arbitrator

Our conclusions are materially premised on four Courts of Appeal opinions which have directly addressed the issue before us--waiver by litigation conduct. (*Grigsby & Associates, Inc. v. M Securities Investment* (11th Cir. 2011) 664 F.3d 1350, 1352-1354; *JPD, Inc. v. Chronimed Holdings, Inc.* (6th Cir. 2008) 539 F.3d 388, 391-394; *Ehleiter v. Grapetree Shores, Inc.* (3rd Cir. 2007) 482 F.3d 207, 215-221 (*Ehleiter*); *Marie v. Allied Home Mortgage Corp.* (1st Cir. 2005) 402 F.3d 1, 9-15.) These decisions identify seven different reasons why *Moses H. Cone* and *Howsam* do not require an arbitrator to decide waiver by litigation conduct issues. First, traditionally waiver by litigation conduct issues in cases subject to the Federal Arbitration Act were decided by the district court rather than an arbitrator. (*Ehleiter, supra,* 482 F.3d at pp. 217-218; *Marie v. Allied Home Mortgage Corp., supra,* 402 F.3d at p. 12.) Nothing in *Moses H. Cone* and *Howsam* suggested the traditional rule was inappropriate. (*Grigsby & Associates, Inc. v. M. Securities Investment, supra,* 664 F.3d at p. 1354; *JPD, Inc. v. Chronimed Holdings, Inc., supra,* 539 F. 3d at p. 394.) The only reference in either case to the traditional rule (the court decides the waiver by litigation conduct issue) was in *Moses H. Cone, supra*, 460 U.S. at page 25, footnote 31. That reference was to *Germany v. River Terminal R. Co.*, *supra*, 477 F.2d at page 547 where the district and appellate courts decided the waiver by litigation conduct issue.

Second, three of the circuit courts have examined the context of the '"waiver, delay, or a like defense"' language in *Howsam, supra*, 537 U.S. at page 84. The three

courts have noted the context in *Howsam, supra*, 537 U.S. at page 84 did not relate to waiver by litigation conduct. As noted, *Howsam* involved whether a six-year National Association of Securities Dealers time limit for commencing an arbitration had been violated. (*Id*. at pp. 82, 85.) The Third Circuit panel explained: "Properly considered within the context of the entire opinion, however, we believe it becomes clear that the Court was referring only to waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration, such as the [National Association of Securities Dealers] time limit rule at issue in that case, and not to claims of waiver based on active litigation in court." (*Ehleiter, supra*, 482 F.3d at p. 219; see *JPD, Inc. v. Chronimed Holdings, Inc.*, *supra*, 539 F.3d at pp. 393-394.)

Third, *Howsam, supra*, 537 U.S. at pages 84-85 relied upon language in the Revised Uniform Arbitration Act of 2000 which we have previously discussed. That language indicated that an arbitrator decides issues of substantive arbitrability such as time limits, notice, laches, and estoppel. However, at another point, a comment to the Revised Uniform Arbitration Act of 2000 states that courts, rather than arbitrators, decide waiver issues. (*Marie v. Allied Home Mortgage Corp.*, *supra*, 402 F.3d at p. 13.) The comment cites to cases involving waiver based on litigation conduct. (*Ehleiter, supra*, 482 F.3d at p. 218.)

Fourth, the circuit courts viewed the judicial branch as better qualified to decide the waiver by litigation conduct question; i.e., judges have greater expertise at the identification of pre-arbitration abuses. The Third Circuit panel, synthesizing the discussion of the First Circuit noted: "[T]he *Marie* court observed that the trial judge, having been directly involved in the entire course of the legal proceedings, is better positioned to determine whether the belated request for arbitration is a thinly veiled attempt to forum shop. [Citation.]" (*Ehleiter, supra*, 482 F.3d at p. 218, citing *Marie v. Allied Home Mortgage Corp.*, *supra*, 402 F.3d at p. 13; accord *Grigsby & Associates, Inc. v. M Securities Investment*, *supra*, 664 F.3d at p. 1354; *JPD, Inc. v. Chronimed Holdings, Inc.*, *supra*, 539 F.3d at p. 394.) Fifth, the circuit courts spoke of the inefficiency of having an arbitrator decide arbitration has been waived only then to return

19

it to a district court for trial.  (*JPD, Inc. v. Chronimed Holdings, Inc.*, *supra*, 539 F.3d at p. 394; *Marie v. Allied Home Mortgage Corp.*, *supra*, 402 F.3d at pp. 13-14.)

Sixth, as noted, the '"waiver, delay, or a like defense"' language in *Howsam* finds its basis in *Moses H. Cone, supra,* 460 U.S. at pages 24-25.  The Third Circuit viewed this "waiver, delay, or a like defense to arbitrability" in *Moses H. Cone, supra,* at pages 24 and 25 as but part of a broader discussion about the Federal Arbitration Act.  The Third Circuit panel explained:  "In our view, *Moses H. Cone* established only that arbitrability defenses such as waiver should be 'addressed with a healthy regard for the federal policy favoring arbitration,' id. at 24, not that these defenses should presumptively be resolved by an arbitrator." (*Ehleiter, supra*, 482 F.3d at p. 219, fn. 10.)

Seventh, several of the circuit panels relied upon the language in title 9 United States Code section 3[3] which requires district courts to stay an action unless a party is in default.  The First Circuit panel stated:  "We start our analysis of whether waiver by conduct in this context is a decision for the court or for the arbitrator by noting that textually under the [Federal Arbitration Act], a court is only permitted to stay a court action pending arbitration if 'the applicant for the stay is not in *default* in proceeding with such arbitration.' 9 U.S.C. § 3 (emphasis added).  A 'default' has generally been viewed by courts as including a 'waiver.'  [Citations.]  See, e.g., . . . *County of Middlesex v. Gevyn Constr. Corp.* [(1st Cir.1971)] 450 F.2d 53, 56 [f]n. 2 (only waiver due to the pursuit of legal remedy inconsistent with arbitration is a "default" under 9 U.S.C. § 3).  This language would seem to place a statutory command on courts, in cases where a stay is sought, to decide the waiver issue themselves." (*Marie v. Allied Home Mortgage*

---

[3]  Title 9 United States Code section 3 states, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

20

*Corp., supra*, 402 F.3d at p. 12-13; see *JPD, Inc. v. Chronimed Holdings, Inc.*, *supra*, 539 F.3d at p. 394; *Ehleiter, supra*, 482 F.3d at p. 218.)

We are satisfied the foregoing analysis correctly delineates why the "'waiver, delay, or a like defense'" language in *Howsam, supra*, 537 U.S. at page 84 does not apply here. The Supreme Courts of Colorado, Nebraska, Texas and Alabama have likewise concluded that *Howsam, supra*, 537 U.S. at page 84 does not apply in the litigation by conduct waiver context. (*Radil v. National Union Fire Insurance Co.* (Col. 2010) 233 P.3d 688, 693-695; *Good Samaritan Coffee Co. v. LaRue Distributing, Inc.* (Neb. 2008) 748 N.W.2d 367, 373-374; *Perry Holmes v. Cull* (Tex. 2008) 258 S.W.3d 580, 588-589; *Ocwen Loan Servicing, LLC v. Washington* (Ala. 2006) 939 So.2d 6, 11-14.) Other courts are likewise in accord. (*In re Toyota Motor Corp.* (C.D.Cal. 2012) 838 F.Supp.2d 967, 974-975; *Parler v. KFC Corporation* (D.Minn. 2008) 529 F.Supp.2d 1009, 1014; *Delmarva Power & Light Co. v. United States* (Fed.Cl. 2007) 79 Fed.Cl. 205, 211-212*; Boateng v. General Dynamics Corporation* (D.Mass. 2007) 473 F.Supp.2d 241, 250-251; *County of Hawai'i v. Unidev, LLC* (Hawaii App. 2012) 289 P.3d 1014, 1038; *Ford Motor Credit Co. v. Cornfield* (lll.App. 2009) 918 N.E.2d 1140, 1154-1155.)

The parties could have placed language in their agreement requiring the arbitrator to determine the waiver issue under all circumstances. (See *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. __ [130 S. Ct. 2772, 2779] [where arbitration provision states that arbitrator will determine "enforceability" of agreement, arbitrator, not court, decides whether entire agreement is unconscionable]; see *Quilloin v. Tenet Healthsystem Philadelphia, Inc.* (E.D. Penn. 2011) 763 F. Supp.2d 707, 722-723.) They did not. Accordingly, the trial court correctly decided the waiver by litigation conduct issue here.

C. the Eighth Circuit analysis

The Eighth Circuit, in a single case, has taken the position since *Howsam* was decided, that the waiver by litigation conduct issue is to be decided by an arbitrator, not a judge. (*Nat'l Am. Ins. v. Transamerica Occidental Life Ins. Co.* (8th Cir. 2003) 328 F.3d

21

462, 466 (*Transamerica*).) The Eighth Circuit decision arose in connection with a motion to replace an arbitrator pursuant to title 9 United States Code section 5.[4] Three arbitrators were selected and a vacancy developed when one resigned due to health issues. The dispute concerning naming the replacement arbitrator arose after the arbitration had been lingering for a year. (*Id*. at pp. 463-464.)

In this context, different from our own, the Eighth Circuit panel explained: "Finally, Transamerica contends that [the plaintiff] has waived the right to arbitrate because [the plaintiff] pursued litigation in the Oklahoma courts on reinsurance contracts to which Transamerica is a party. However, the United States Supreme Court has recently reiterated [in *Howsam*] that 'the presumption is that the arbitrator should decide "allegation[s] of waiver, delay, or a like defense to arbitrability.'" [Citations.] Therefore, once the panel is reconstituted with the arbitrator appointed by district court, the issue of waiver may be presented for the panel's consideration." (*Transamerica*, *supra*, 328 F.3d at p. 466.)

The Third Circuit declined to follow the Eighth Circuit's foregoing analysis in *Transamerica*, *supra*, 328 F.3d at page 466. (*Ehleiter*, *supra*, 482 F.3d at pp. 219-221.) The Third Circuit panel identified two reasons. First, the waiver conduct in *Transamerica* was unclear. On one hand, the language cited in the immediately preceding paragraph refers to conduct in the Oklahoma courts. However, in the district court, Transamerica argued the waiver occurred because of participation in a prior arbitration. (*Transamerica*, *supra*, 328 F.3d at pp. 463-464.) The Third Circuit panel explained: "Although the Eighth Circuit described Transamerica's waiver argument . . . as being based on [the plaintiff's] pursuit of 'litigation in the Oklahoma courts,' on three

---

[4] Title 9 United States Code section 5 states in part: "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators . . . , such method shall be followed; . . . or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators . . . , as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein . . . ."

22

different occasions, . . . the court described Transamerica's waiver argument as being based exclusively on [the plaintiff's] participation in a prior arbitration proceeding involving the underlying dispute between the parties, which perhaps suggests that any prior court action brought by [the plaintiff] had been referred to, and resolved in, arbitration. To the extent that *Transamerica* may be understood as a case involving waiver by prior arbitration conduct, rather than by prior litigation conduct, the case is plainly distinguishable from ours on this basis." (*Ehleiter*, *supra*, 482 F.3d at p. 220; see *Perry Homes v. Cull*, *supra*, 258 S.W.3d at p. 589, fn. 34.)

Second, in terms of the Eighth Circuit's analysis concerning waiver by litigation conduct, the Third Circuit held: "To the extent that *Transamerica* may be fairly read as involving a claim of waiver based on litigation conduct, we believe the result reached by the Eighth Circuit can be explained by the rather unique procedural circumstances of that case. In a typical waiver case, such as the one before us, a party opposing arbitration urges the trial court to deny a motion made under Section 3 or Section 4 of the [Federal Arbitration Act] on the ground that his opponent waived its right to arbitrate by actively participating in the underlying proceedings before that court. As noted above, considerations of comparative expertise and judicial economy, among others, dictate that a waiver defense raised in this context be decided by the court, rather than being referred to an arbitrator with no prior involvement with the case." (*Ehleiter*, *supra*, 482 F.3d at p. 220, fn. omitted.) The Third Circuit panel concluded the arbitrators were in a better position to determine the waiver dispute which involved conduct in the arbitral forum. (*Id*. at pp. 221-222.)

Based on the foregoing, we conclude that the Eighth Circuit analysis in *Transamerica, supra,* 328 F.3d at page 466 should be limited to its unique facts. Our procedural scenario is entirely different and we decline to be bound by *Transamerica* in the context of our case. We express no opinion concerning the merits of the holding in *Transamerica* given its unique *procedural* scenario. And the Third Circuit and the Texas Supreme Court note that the Eighth Circuit has consistently upheld district court orders deciding waiver by litigation conduct issues since *Transamerica* was decided. (*Ehleiter*,

23

*supra*, 482 F.3d at p. 220, fn. 11; *Perry Homes v. Cull*, *supra*, 258 S.W.3d at p. 589, fn. 34; e.g. *Erdman Co. v. Phoenix Land & Acquisition, LLC* (8th Cir. 2011) 650 F.3d 1115, 1118-1119; *Hooper v. Advance America, Cash Advance Centers of Missouri* (8th Cir. 2009) 589 F.3d 917, 920-923; *Southeastern Stud & Comp., Inc. v. American Eagle Design* (8th Cir. 2009) 588 F.3d 963, 968-969; *Lewallen v. Green Tree Servicing, L.C.C.* (8th Cir. 2007) 487 F.3d. 1085, 1090-1094; *Kelly v. Golden* (8th Cir. 2003) 352 F.3d 344, 348-350.)

[Part III(D) is deleted from publication.]

D.  Substantial Evidence Supports The Trial Court's Ruling

The trial court's decision denying defendants' motion to compel arbitration is supported by substantial evidence.  Collectively defendants' actions were inconsistent with an intent to arbitrate.  Defendants succeeded on their initial demurrer and plaintiffs filed their second amended complaint.  Defendants then filed a motion requiring plaintiffs to furnish a bond under Corporations Code section 800.[5]  Plaintiffs were required to defend this motion by furnishing evidence that the cause of action will benefit the corporation or its shareholders.  (See *West Hills Farms, Inc. v. RCO AG Credit, Inc.* (2009) 170 Cal.App.4th 710, 715, quoting *Donner Management Co. v. Schaffer* (2006) 142 Cal.App.4th 1296, 1308 ["'[T]he essential purpose of the section 800 bond statute is

_____

[5]  Corporations Code section 800, subdivision (c), provides in pertinent part:  "[A]t any time within 30 days after service of summons upon the corporation or upon any defendant who is an officer or director of the corporation, or held such office at the time of the acts complained of, the corporation or the defendant may move the court for an order, upon notice and hearing, requiring the plaintiff to furnish a bond as hereinafter provided.  The motion shall be based upon one or both of the following grounds:  [¶] (1) That there is no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its shareholders. [¶]  (2) That the moving party, if other than the corporation, did not participate in the transaction complained of in any capacity."

to create a deterrent to unwarranted shareholder derivative lawsuits by providing a mechanism for securing a prevailing defendant's expenses up to $50,000.'"].) Plaintiffs submitted documents in support of their opposition, including the declarations of: Augustine; Julie Choi, former senior vice-president of programming at ImaginAsian; and Benjamin Scheibe, counsel for plaintiffs. In addition, plaintiffs submitted 94 pages of exhibits. Plaintiffs filed two separate requests to introduce oral testimony at the bond motion hearing. Plaintiffs submitted a declaration from their attorney indicating they had spent over 30 hours of attorney time opposing defendants' motion.

Defendants later submitted a case management statement on January 9, 2013. In this statement, defendants did not indicate the existence of an applicable arbitration clause and did not assert their willingness to submit to binding private arbitration. Defendants did not seek arbitration until six months after the filing of their lawsuit. In the meantime, defendants had engaged in substantial use of the litigation process, including the filing of demurrers and the bond motion.

As noted, CJ CGV America also filed a separate lawsuit on December 20, 2012, against Augustine for his alleged misrepresentation inducing it to sign the stock purchase agreement–the same contract that is the basis for the second amended complaint. This cause of action falls squarely within the scope of the purchase agreement. Defendants indicated an intent to stay the proceedings in their reply in support of their motion to compel arbitration. However, defendants did not seek a stay of proceedings prior to filing this appeal and it is not in the record before us. (See *Truong v. Nguyen* (2007) 156 Cal.App.4th 865, 882 ["Generally, documents and facts that were not presented to the trial court and which are not part of the record on appeal, cannot be considered on appeal."]; *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632 [same].)

Defendants contend plaintiffs fundamentally altered their case in response to their motion to require a bond. This argument has no merit in the context of the waiver of arbitration issue. Additionally, plaintiffs' second amended complaint included both allegations regarding defendants' Korean programming and the proposed stock valuation.

The trial court did not err by finding defendants waived their arbitration right. We need not discuss the parties' other contentions.

## IV. DISPOSITION

The order denying the motion to compel arbitration is affirmed. Plaintiffs, Augustine Hong, Michael Hong and Nae Young Chung, are awarded their appeal costs from defendants, CJ CGV America Holdings, Incorporated, Joon Hwan Choi, Theodore Kim, and Sang Heum Cho.

**CERTIFIED FOR PARTIAL PUBLICATION**

TURNER, P. J.

We concur:

MOSK, J.

KUMAR, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.