Filed 9/4/14 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KURT KNUTSSON et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>KTLA, LLC,<br><br>Defendant and Appellant. | B251567<br><br>(Los Angeles County<br>Super. Ct. No. BC500792)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

The opinion filed on August 12, 2014 is modified as follows.

1.  On page 17, first sentence of the first full paragraph is deleted.  The following sentence is inserted in its place:

The second relevant issue involved the Second Circuit's discussion of "procedural" preconditions to the duty to arbitrate.

2.  On page 17, first sentence in the second full paragraph, delete the words "taken the position that."  Insert in its place the word "ruled" so the sentence reads:

The Court of Appeals had ruled that so-called issues of "procedural arbitrability" were for the arbitrator, not the court, to resolve.

3.  On page 20, first paragraph, delete the sentence, "So it is clear, nothing in *Hong* stands for the proposition that when a procedural issue is unrelated to the ultimate disposition of a dispute the arbitrator decides substantive arbitrability."  Insert in its place:

So it is clear, nothing in *Hong* stands for the proposition that when a procedural issue is unrelated to the dispute's ultimate disposition, the arbitrator decides substantive arbitrability issues.


_____    _____    _____
TURNER, P.J.                      MOSK, J.                        KRIEGLER, J.

Filed 8/12/14 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KURT KNUTSSON et al., | B251567 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC500792) |
| v. | |
| KTLA, LLC, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Barnes & Thornburg, Stephen R. Mick and Christian A. Jordan for Defendant and Appellant.

Judith Salkow Shapiro, Moskowitz Law Group and Karen Moskowitz for Plaintiffs and Respondents.

# I. INTRODUCTION

Defendant, KTLA, LLC, appeals from an order denying its motion to compel arbitration. Plaintiffs, Kurt Knutsson and his company, Woojivas, Incorporated, entered into a personal service agreement to act as a technology reporter with defendant, a television broadcaster. The personal service agreement is subject to a three-step grievance and arbitration provision in a collective bargaining agreement. The collective bargaining agreement is between Mr. Knutsson's union, the American Federation of Television and Radio Artists Los Angeles Local (the union), and defendant. The union is not a party to this appeal.

After the personal service agreement was terminated, plaintiffs filed suit alleging contract breach, age discrimination, unfair business practices, and misappropriation of Mr. Knutsson's likeness claims. Defendant moved to compel arbitration. The trial court denied defendant's motion to compel arbitration. We affirm the order denying the motion to compel arbitration. We conclude: defendant has forfeited the right to compel compliance with the collective bargaining agreement's non-arbitration provisions in the three-step grievance process; the arbitration provisions of the three-step grievance process do not allow defendant to compel arbitration between it and plaintiffs; and the trial court, not an arbitrator, resolves the substantive arbitrability issue, notwithstanding the holding in *John Wiley & Sons, Inc. v. Livingston* (1986) 376 U.S. 543, 546-547 (*John Wiley*).

# II. BACKGROUND

## A. Plaintiffs' complaint

Plaintiffs filed their complaint on February 11, 2013. Plaintiffs sued defendant and various local television stations owned or affiliated with its parent company, the Tribune Broadcasting Company. Defendant is a California corporation operating a

2

television station in Los Angeles. Mr. Knutsson is a technology reporter. Woojivas, Incorporated is a California corporation belonging to Mr. Knutsson.

Plaintiffs allege the following. In 1995, Mr. Knutsson established himself as a technology reporter for national and local television programs. He syndicated his technology reports. Mr. Knutsson had used his time, effort, and money: promoting "Kurt the CyberGuy" at technical and broadcast shows; advertising in journals; and traveling throughout the United States. In the middle of 1996, Mr. Knutsson proposed to defendant that it provide broadcast facilities and support for the production of programming. Mr. Knutsson would appear as "Kurt the CyberGuy" and report on consumer technology. In return, Mr. Knutsson provided his services at a lower rate than normal and gave defendant the right to broadcast his technology segments. By the end of 1996, Mr. Knutsson's efforts led to the syndication of the Kurt the CyberGuy reports to four stations.

By 2008, plaintiffs' segments were appearing three or more times per week on two dozen television stations. Plaintiffs' segments were prominently featured on all Web sites of all these stations and received millions of Internet hits. From 1997 through 2008, plaintiffs continued their association with defendant, during which the working arrangement would sometimes be memorialized in writing.

In 2008, defendant entered into a written agreement with Woojivas, Incorporated. Woojivas, Incorporated agreed to furnish Mr. Knutsson's services and defendant was to employ him for five years at a specified salary. Mr. Knutsson would: report on consumer technology and computers; broadcast as the CyberGuy; and develop Web site content under the CyberGuy brand. Defendant additionally agreed to pay Woojivas, Incorporated 20 percent of net revenue derived from new business generated during the 2008 agreement that was attributable to sponsors introduced by Mr. Knutsson. If defendant generated substantial additional revenue by exploiting his Web site content on other media platforms not related to defendant, they would negotiate in good faith additional amounts of payment. The agreement prohibited use of the CyberGuy brand as

3

an endorsement. The agreement provided that defendant did not own the CyberGuy designation.

On December 30, 2010, defendant sent a letter to Mr. Knutsson giving notice that it intended to terminate the 2008 agreement at the end of March 31, 2011, after three years. The letter did not state defendant intended to terminate its association with Mr. Knutsson nor advising it would take Kurt the CyberGuy off the air. Mr. Knutsson believed he would continue as a technology reporter if he agreed to take less money.

On February 14, 2011, Mr. Knutsson received a phone call from defendant's news director, Jason Ball, and its human resources director, Barbara Lopez-Nash. Mr. Ball informed Mr. Knutsson that he would not return to the television station and February 14, 2011, was Mr. Knutsson's last day on the air. Mr. Ball sent an e-mail to that effect and also advised that other local television stations would be notified the next day regarding Mr. Knutsson's departure.

On February 15, 2011, defendant included in its news broadcast a report on consumer technology featuring Rich DeMuro. Mr. DeMuro broadcasted his segment from the same studio used by Kurt the CyberGuy with the same format and style. Mr. Knutsson was not mentioned. Defendant never issued a press release or announced to the public that Mr. Knutsson and Kurt the CyberGuy were no longer part of the television station. Plaintiffs believed none of the other affiliated television stations issued any such announcement.

Mr. DeMuro provided technology reports for defendant in the same manner and style as the Kurt the CyberGuy reports. Plaintiffs believed the other television stations also did the same. Defendant and the affiliated television stations continued to feature CyberGuy or Kurt the CyberGuy on their Web sites. The sites were designed such that a user searching for CyberGuy broadcasts or stories online would be led to reports provided by Mr. DeMuro. Plaintiffs believed defendant manipulated the content descriptions such that persons seeking Mr. Knutsson were routed to defendant's Web sites featuring Mr. DeMuro. Plaintiffs allege such practices of Web site misdirection have continued in part.

4

Plaintiffs allege: contract breach by failing to pay Woojivas, Incorporated a share of advertising revenue and impliedly or explicitly using Mr. Knutsson and the Kurt the CyberGuy brand as an endorsement; misappropriation of his name and likeness in violation of Civil Code section 3344; unfair business practices in violation of Business and Professions Code section 17200; common law misappropriation; and age discrimination in violation of the Fair Employment and Housing Act. Plaintiffs sought damages and attorney's fees, costs of suit and other just and proper relief.

### B. Defendant's Motion To Compel Arbitration

On May 17, 2013, defendant filed its motion to compel arbitration. Defendant cited three agreements: the September 1, 2008 collective bargaining agreement between defendant and the union; the April 1, 2008 personal services agreement (personal services agreement) between defendant and Woojivas, Incorporated; and the April 1, 2008 Knutsson letter. Plaintiffs refused to stipulate to arbitration as of May 6, 2013.

The terms of the personal services agreement stated: "This Agreement is subject to the applicable terms of the KTLA/[American Federation of Television and Radio Artists] Staff Newspersons Agreement. KTLA will be entitled to all of the rights, privileges and benefits conferred upon KTLA or which KTLA is not prohibited from acquiring thereunder . . . ." The staff newspersons agreement is the aforementioned collective bargaining agreement. The April 1, 2008 Knutsson letter provides, "I [Mr. Knutsson] agree to be personally bound by the provisions of the [personal services] agreement that apply to me, or that impose obligations or warranties on Woojivas Corporation."

Under the collective bargaining agreement, there is a mandatory procedure for resolution of grievances filed between defendant and any employee. The grievance and arbitration provision provides: "Any grievance as defined herein initiated by an employee, a group of employees, or by [the union] on behalf of any employee shall be handled solely in accordance with this grievance procedure. No employee, group of

5

employees, or [the union] shall at any time bring or maintain any action in any court or before any administrative agency arising out of an alleged breach of this Agreement until all grievance and arbitration procedures provided in this Agreement have been properly exhausted. [¶] . . . A grievance is defined as any dispute or difference with [defendant] by an employee or employees involving an alleged violation by [defendant] of the terms of this Agreement or any personal service agreement between [defendant] and any employee covered by this Agreement."

The collective bargaining agreement's grievance procedure consists of three steps. Step 1 allows the union or an employee to resolve a grievance by discussion with the supervisor.[1] Step 2 permits resolution of the grievance if the *union* is dissatisfied with the supervisor's resolution of the matter. Step 2 only permits the *union* to formally present a grievance to a department manager.[2]

Step 3 of the grievance procedure can potentially lead to arbitration. However, as in connection with step 2, step 3 only permits the union to proceed with the grievance and, if necessary, arbitration. There are two phases of the grievance procedure in step 3. The initial phase of step 3 involves the filing of a written notice of appeal to be followed

---

[1] Step 1 states: "[The union] and/or employee(s) must first attempt to resolve the grievance by discussion with the supervisor, either with or without a designated [union] representative. Such grievance must be presented within sixty (60) calendar days after the employee[](s) has or should have knowledge of the alleged contractual violation or it shall not be processed under or be subject to this procedure. Pending settlement of the dispute and/or grievance, the supervisors order shall be followed."

[2] Step 2 states: "If dissatisfied with the supervisor's disposition of the request or complaint, which should be issued within ten (10) working days of presentment, [the union] may formally present the alleged grievance in writing to the Department Manager. [¶] (a) The grievance presented in this Step shall be set forth in writing on appropriate forms furnished by [defendant]. The written Grievance must cite the specific language of this Agreement which the employee and/or [the union] alleges [defendant] has violated. [¶] (b) The Department Manager shall be required to answer the complaint within ten (10) working days after the date of presentation in such written form."

6

by a discussion process.[3]  If the discussion process is unsuccessful, then the dispute potentially may be subject to arbitration.  We recognize there is ambiguity and even typographical errors in the step 3 discussion.  Step 3 provides in part in terms of arbitration:  "Grievances discussed in such meetings and not settled shall be answered in writing not later than ten (10) working days after the date of such meeting, unless by mutual agreement a different date for disposition is agreed upon.  Step 3 grievances to which a response is nor- given [*sic*] in writing within the time frame set forth herein, shall be deemed sustained on a non-precedent setting basis, '[*sic*] and the appropriate remedy for such violation shall be subject: [*sic*] to arbitration under the following steps.  [¶]  (c) Arbitration of grievances shall be filed and processed strictly in accordance with the following procedure:  (1)  Any matter that is not adjusted by [defendant] and [the union] pursuant to the grievance procedure set forth above may, within fifteen (15) working days of [defendant's] Step 3 answer, be referred to arbitration for final and binding resolution. [¶]  (a)  Any such [union] demand for arbitration must be in writing, directed to [defendant's] General Manager or to his/her designated representative.  [¶]  (b)  If a grievance is not referred to arbitration within the time limit established above, it shall be deemed withdrawn by [the union] and shall not be further processed or be subject to this procedure.  [¶]  (ii)  Only [the union] or [defendant] may require arbitration of the other party to this Agreement."  Later, the grievance procedure provides that any award by the arbitrator is final and binding upon defendant, the union, and the employees.

Defendant argued plaintiffs were personally bound under the personal services agreement to the arbitration clause in the collective bargaining agreement.  Defendant contended plaintiffs expressly incorporated the collective bargaining agreement in the

---

[3]  The step 3 appeal and discussion process is as follows:  "In order for a grievance to be considered further, written notice of appeal must be received by [defendant] within ten (10) working days after decision in Step 2, by the designated representative of [the union] upon [defendant's] General Manager or his/her designated representative.  Such notice shall state the subject matter of the grievance and objections taken by either party to previous dispositions.  [¶]  (a)  Discussion of the grievance thus appealed shall take place within ten (10) working days following receipt of the notice of appeal, unless such time limit is extended by mutual agreement of the parties."

personal services agreement. Defendant requested the action be dismissed pending arbitration or stayed in the alternative.

On August 9, 2013, plaintiffs filed their opposition. Plaintiffs argued: their claims are entirely outside the scope of the collective bargaining agreement; only the union member or employee can initiate the grievance procedure; only after the grievance had been processed in accordance with the procedures in the collective bargaining agreement could defendant require arbitration; a grievance could be initiated only by citing specific language in the collective bargaining agreement which the employee alleged had been violated; and because the collective bargaining agreement did not have language related to the issues raised in plaintiffs' complaint, they did not have to file a grievance.

Defendant filed its reply on August 15, 2013. Defendant contended plaintiffs incorporated the collective bargaining agreement into the personal services agreement. Thus, defendant argued plaintiffs are bound to comply with the grievance and arbitration provisions. Defendant argued the arbitration provision specifically covered disputes involving personal service agreements.

### C. Order Denying The Motion To Compel Arbitration

On August 26, 2013, the trial court denied defendant's motion to compel arbitration and to dismiss, or alternatively stay, the action. The trial court assumed, without deciding, that plaintiffs' and defendant's dispute was a grievance under the collective bargaining agreement. It found there was no evidence: Mr. Knutsson or the union attempted to resolve the agreement by discussion with a supervisor; a written formal grievance was submitted to a department manager; a written appeal notice was submitted; or a written answer to a grievance "not settled" existed. Concluding the grievance procedure was a condition precedent for arbitration and it had not occurred, the trial court denied the motion. As will be noted, the trial court's discussion of the prerequisites to arbitration is challenged by defendant. Defendant subsequently appealed.

8

## III.  DISCUSSION

### A.  Overview

This case involves litigation to enforce the provisions of a collective bargaining agreement pursuant to title 29 United States Code section 185(a).  Title 29 United States Code section 185(a) codifies section 301(a) of the Labor Management Relations Act.  (Pub.L. No. 101, (June 23, 1947) 61 Stat. 156.)  Courts typically refer to the statutory provisions at issue as section 301(a) rather than by citation to the United States Code.  Section 301(a) states in part:  "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought . . . ."  Section 301(a) applies to efforts to compel compliance with grievance and arbitration provisions in collective bargaining agreements.  The United States Supreme Court has explained:  "Collective-bargaining contracts . . . generally contain procedures for the settlement of disputes to mutual discussion and arbitration.  These provisions are among those which are to be enforced under § 301."  (*Hines v. Anchor Motor Freight, Inc.* (1976) 424 U.S. 554, 562; see *Winston v. General Drivers, Warehousemen & Helpers* (6th Cir. 1996) 93 F.3d 251, 255.)  Federal labor policy requires employees seeking to resolve their differences with employers to use the "contract grievance procedures" if one is contained in a collective bargaining agreement.  (*Republic Steel Corp. v. Maddox* (1965) 379 U.S. 650, 652; see *Livadas v. Bradshaw* (1994) 512 U.S. 107, 123.)  There is a strong federal policy favoring enforcement of collective bargaining agreements.  (*Groves v. Ring Screw Works* (1990) 498 U.S. 168, 173; *Hines v. Anchor Motor Freight, Inc.*, *supra*, 424 U.S. p. 562.)  Section 301(a) requires judicial enforcement of grievance and arbitration procedures, "The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute."  (*United Paperworkers Int'l Union v.*

*Misco, Inc.* (1987) 484 U.S. 29, 37; see *Soremekun v. Thrifty Payless, Inc.* (9th Cir. 2007) 509 F.3d 978, 986.)

The federal courts are charged with developing a common law that applies to the enforcement of collective-bargaining agreements. (*United Paperworkers Int'l Union v. Misco, Inc.*, *supra*, 484 U.S. at p. 40, fn. 9; *Textiles Workers Union of America v. Lincoln Mills of Alabama* (1957) 353 U.S. 448, 456-457.) We and the federal courts have concurrent jurisdiction to enforce the provisions of section 301(a). (*Livadas v. Bradshaw*, *supra*, 512 U.S. at p. 123, fn. 17; *Charles Dowd Box Co., Inc. v. Courtney* (1962) 368 U.S. 502, 507.) In resolving disputes over grievance and arbitration provisions in a collective bargaining agreement, we apply federal substantive law including the common law developed by federal courts. (*Livadas v. Bradshaw*, *supra*, 512 U.S. at p. 123, fn. 17; *Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 209.)

## B. Steps 1 And 2

As noted, step 1 of the grievance and arbitration procedure requires an attempt be made to resolve the dispute by discussion with a supervisor. Either the union or the employee can attempt to resolve the dispute informally. We asked the parties to brief whether defendant could compel plaintiffs to participate in the step 1 discussion process. Defendant contends that plaintiffs are obligated to participate in the step 1 discussion process. As noted, defendant has a right pursuant to section 301(a) to compel compliance with the grievance process set forth in the collective bargaining agreement. (*United Paperworkers Int'l Union v. Misco, Inc.*, *supra*, 484 U.S. at pp. 37-38; *Local 791, UFCW v. Shaw's Supermarkets, Inc.* (1st Cir. 2007) 507 F.3d 43, 46-47.) We conclude defendant has forfeited the right under section 301(a) to compel compliance with step 1 of the collective bargaining agreement's grievance resolution process. In reaching this conclusion, we apply common law applicable to labor-management disputes developed by the federal courts in connection with section 301(a) related issues.

10

Federal common law, in context of collective bargaining agreements, recognizes a party may forfeit rights available under section 301(a) and other provisions of the Labor Management Relations Act. We acknowledge there is no direct federal decisional authority which holds a nonjurisdictional issue concerning compelling resort to a grievance process may be forfeited. However, federal common law provides that nonjurisdictional issues related to section 301(a) may be forfeited as in connection with other appellate issues. For example, the First Circuit has held the right to compel compliance with a grievance procedure which required discussion and arbitration was subject to waiver: "[It] has long been held that parties are free to waive their rights to arbitration under a contract and proceed to present their contractual dispute to a court. [Citations.] Moreover, such a waiver need not always be express; rather, courts can infer a waiver from the circumstances. [Citation.]" (*Jones Motor Co., Inc. v. Chauffeurs, Teamsters and Helpers Local Union No. 633* (1st Cir. 1982) 671 F.2d 38, 42; see *ABF Freight System, Inc. v. International Broth. of Teamsters* (W.D.Ark. 2012) 884 F.Supp.2d 795, 805 ["[A] party may implicitly waive its contractual right to a grievance procedure by engaging in evasive and dilatory litigation-related activities."].) The Ninth Circuit has found a party waived a section 301(a) preemption argument which was not properly preserved in the district court. (*Johnson v. Armored Transport of California, Inc.* (9th Cir. 1987) 813 F.2d 1041, 1044.) The First Circuit agreed that a nonjurisdictional section 301(a) preemption issue can be forfeited by a timely failure to assert it in the district court. (*Sweeney v. Westvaco Co.* (1st Cir. 1991) 926 F.2d 29, 41; accord, *Fryer v. A.S.A.P. Fire & Safety. Corp., Inc.* (1st Cir. 2011) 658 F.3d 85, 90 ["Because a successful preemption defense under the LMRA would dictate a change in the choice of law, but not a change in forum, the preemption defense is not jurisdictional and can be waived. [Fn. omitted.]"]; *Brown v. Trustees of Boston University* (1st Cir. 1990) 891 F.2d 337, 356-358, 363-364 [employer waived argument premised on section 14(a) of the Labor Management Relations Act (26 U.S.C. § 164(a)) by failing to raise it until after the jury returned its verdict].) Further, the Fifth Circuit has held a Labor Management Relations Act preemption issue, while raised in the district court, was waived because it was not

11

raised in the opening brief. (*Graef v. Chemical Leaman Corp.* (5th Cir. 1997) 106 F.3d 112, 115, fn. 2.) Thus, federal common law establishes a litigant may waive issues during litigation relating to enforcement of rights under the Labor Management Relations Act.

Defendant has waived or forfeited the right to seek enforcement of the step 1 of the collective bargaining agreement. The motion sought to enforce an alleged duty to arbitrate. The motion is entitled in part, "MOTION TO COMPEL ARBITRATION." The notice of motion states in part, "[Defendant] . . . will, and hereby does, move the Court for an Order compelling arbitration of all pending causes of action in the Complaint as against [defendant] and dismissing, or in the alternative staying, this action until arbitration is completed." The two headings in the motion state, "The Court Should Compel Arbitration[]" and "The Action Should Be Dismissed Pending Arbitration." The arguments presented in defendant's reply are: any dispute remotely susceptible to arbitration must be arbitrated; plaintiffs are bound by their incorporation of the collective bargaining agreement in the personal services agreement; Mr. Knutsson's age discrimination claim is properly arbitrable; and though there are codefendants who are not parties to the arbitration agreement, that does not permit the motion to compel to be denied as to plaintiffs and defendant.

At no time in the trial court did defendant argue that plaintiffs must engage in the employee/supervisor discussion required by step 1. Further, defendant never sought to compel compliance with step 2 as permitted by section 301(a). (*United Paperworkers Int'l Union v. Misco, Inc.*, *supra*, 484 U.S. at p. 37; see *Soremekun v. Thrifty Payless, Inc.*, *supra*, 509 F.3d at p. 986.) Further, Mr. Knutsson had no obligation under step 2 to do anything. Unlike step 1, steps 2 and 3 require the *union* to act on behalf of the employee. As noted, step 2 states in part, "If dissatisfied with the supervisor's disposition of the request or complaint, which should be issued within ten (10) working days of presentment, [the union] may formally present the alleged grievance in writing to the Department Manager." Thus, defendants failed to compel compliance pursuant to

section 301(a) with steps 1 and 2 in the trial court.  Under federal common law, they have forfeited the right to do so now.

## C.  Step 3 And Arbitration

As previously explained, step 3 involves:  the filing of a notice of appeal within 10 days of the step 2 decision by an union representative; within 10 days thereafter, there is to be a discussion of the grievance; unsettled grievances are to be answered in writing within 10 days; and the "appropriate remedy" for an unresolved grievance is arbitration. As noted, the grievance procedure requires the union to file a demand within 15 days.  If the union fails to file a demand within 15 days, it is deemed withdrawn.  And as previously noted, the collective bargaining agreement expressly states, "Only [the union] or [defendant] may require arbitration of the other party to this Agreement."

We turn now to defendant's contention that it can compel *plaintiffs* to arbitrate their causes of action.  In doing so, we apply common law developed by the federal courts.  In *AT & T Technologies v. Communication Workers of America* (*AT & T Technologies*) (1986) 475 U.S. 643, 648-649, the high court two core principles that apply in the collective bargaining context:  "The first principle . . . is that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'  [Citation.]  This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.  [Citation.]  [¶]  The second rule, which follows inexorably from the first, is that the question of arbitrability--whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance--is undeniably an issue for judicial determination.  Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  (See *Granite Rock Co. v. International Brotherhood of Teamsters* (2010) 561 U.S. 287, 299 (*Granite Rock Co.*) ["arbitration is strictly a matter of consent[]"]; *Nolde Bros., Inc. v. Local No. 358, Bakery*

13

*and Confectionery Workers Union* (1977) 430 U.S. 243, 250-251 ["Our prior decisions have indeed held that the arbitration duty is a creature of the collective-bargaining agreement and that a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so."].)

Here, plaintiffs and defendant never agreed to arbitrate any dispute between them. The collective bargaining agreement expressly states only the union and defendant may require arbitration of the other party. The collective bargaining agreement does not grant a union member the power to compel defendant to arbitrate a dispute. Conversely, defendant may only compel the union to arbitrate, not a member of the rank and file. Defendant has cited no common law developed by the federal courts that creates a duty by an employee under these circumstances to arbitrate a dispute.

Additionally, as noted, defendant never sought to compel compliance with steps 1 and 2, which are prerequisites to step 3 where arbitration can occur. Defendant seeks to move directly to step 3. Defendant does not seek to enforce steps 1 and 2, the contractually established precursors of a duty to arbitrate under step 3. The trial court correctly refused to order arbitration. Defendant has sought to compel an arbitration regime that does not exist under the collective bargaining agreement.

## D. The Trial Court Correctly Ruled It, Not The Arbitrator, Was To Decide The Substantive Arbitrability Issue

Defendant argues that the arbitrator, not the court, must decide whether the dispute is arbitrable. This contention, which was presented in the trial court, has no merit. The United States Supreme Court has explained the issue of arbitrability--"whether a collective-bargaining agreement creates a duty for the parties to arbitrate"-- is decided by the court. (*AT & T Technologies*, *supra*, 475 U.S. at p. 649; accord, *United Steelworkers v. Warrior & Gulf Navigation Co.* (1960) 363 U.S. 574, 582-583 & fn. 7.) An exception to the rule that the court decides in a collective bargaining agreement dispute is when the parties clearly and unmistakably agree the arbitrator is to decide the arbitrability issue.

14

(See *Granite Rock Co.*, *supra*, 561 U.S. at p. 299, fn. 5; *AT & T Technologies*, *supra*, 475 U.S. at p. 649.) No such agreement exists in our case.

But, relying on *John Wiley, supra,* 376 U.S. at pages 546-547, defendant argues the arbitrator must decide the arbitrability issue. Defendant argues that the trial court incorrectly engaged in a discussion as to who first violated their steps 1 and 2 obligations. Defendant argues that such procedural prerequisites were matters for an arbitrator to decide, not the trial court. As we will explain, the issue of whether the trial court incorrectly adjudicated who failed to comply with steps 1 and 2 is irrelevant. Plaintiffs cannot be compelled to arbitrate as the collective bargaining agreement only requires arbitration between the union and defendant. If there was a duty to arbitrate, then issues about noncompliance with procedural prerequisites to arbitration could be for an arbitrator if they relate to the dispute's merits. But since there is no duty to arbitrate in the first place, any issue concerning noncompliance with the procedural prerequisites for arbitration is not controlling. Because of the complexity of this issue, we will describe its development in federal common law concerning collective bargaining agreements in some detail.

*John Wiley* arose out of a dispute whether a collective bargaining agreement was still enforceable after two entities merged. Interscience Publishers, Inc., which had previously entered into a collective bargaining agreement with a union, merged with John Wiley & Sons, Inc. After the merger, Interscience Publishers, Inc. ceased operating as a separate business entity. (*John Wiley*, *supra*, 376 U.S. at pp. 545-555.)

The United States Supreme Court's decision in *John Wiley* affirmed, with some reservations, a judgment of the Second Circuit. (*John Wiley*, *supra*, 376 U.S. at pp. 544, 559.) The Second Circuit held, notwithstanding the merger, the court, not the arbitrator, must decide whether the arbitration agreement required the dispute be arbitrated. (*Livingston v. John Wiley & Sons, Inc.* (2d Cir. 1963) 313 F.2d 52, 54-57.) But the Court of Appeals took the position that so-called issues of "procedural arbitrability" were for the arbitrator, not the court, to resolve. (*Livingston v. John Wiley & Sons, Inc.*, *supra*, 313 F.2d at pp. 60-64.) What the Second Circuit characterized as issues of procedural

15

arbitrability involved compliance with prerequisites imposed by the collective bargaining agreement's grievance and arbitration provisions. The Second Circuit held these procedural arbitrability issues must be resolved by the arbitrator. (*Ibid.*)

There were two issues of relevance to be resolved by the Supreme Court after the employer's certiorari petition was granted. (*John Wiley*, *supra*, 376 U.S. at p. 544.) First, the employer argued there was no duty to arbitrate because the collective bargaining agreement, which contained a grievance and arbitration provision, was abrogated by the merger. (*Id.* at p. 545.) The high court: rejected the employer's argument; held the union's grievances were to be arbitrated; and ruled the substantive arbitrability issue was for the court to decide, not the arbitrator. (*Id.* at pp. 544-551.) This is how the United States Supreme Court later described its holding in *John Wiley* concerning who decides whether a dispute is arbitrable: "The 'threshold question' [in *John Wiley*] was whether the court or an arbitrator should decide if arbitration provisions in a collective-bargaining contract survived a corporate merger so as to bind the surviving corporation. *Id.* at 546. The Court answered that there was 'no doubt' that this question was for the courts. '"Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." . . . The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty.' *Id.* at 546-547 (citations omitted)." (*AT & T Technologies*, *supra*, 475 U.S. at p. 649.) Thus, the *John Wiley* opinion held the trial court decides whether a dispute must be arbitrated. (*John Wiley*, *supra*, 376 U.S. at pp. 544-551; see *BG Group PLC v. Republic of Argentina* (2014) 573 U.S. __, __ [134 S.Ct. 1198, 1207] [characterizing *John Wiley* as standing for the proposition that a "court should decide whether an arbitration provision survived a corporate merger"]; *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 84 (*Howsam*) [*John Wiley* stands for the proposition that "a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation"]; see *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444, 452 (plur.

16

opn. of Stevens, J.) [citing *John Wiley* for the proposition that the court decides "whether an arbitration agreement survives a corporate merger"].)

The second relevant issue involved the characterization by the Second Circuit that it was a question of procedural arbitrability. (*John Wiley*, *supra*, 376 U.S. at pp. 555-559.) The Supreme Court described the employer's argument thusly: "Wiley's final objection to arbitration raises the question of so-called 'procedural arbitrability.' The Interscience agreement provides for arbitration as the third stage of the grievance procedure. 'Step 1' provides for 'a conference between the affected employee, a Union Steward and the Employer, officer or exempt supervisory person in charge of his department.' In 'Step 2,' the grievance is submitted to 'a conference between an officer of the Employer, or the Employer's representative designated for that purpose, the Union Shop Committee and/or a representative of the Union.' Arbitration is reached under 'Step 3' 'in the event that the grievance shall not have been resolved or settled in "Step 2."'" Wiley argues that since steps 1 and 2 have not been followed, and since the duty to arbitrate arises only in step 3, it has no duty to arbitrate this dispute. Specifically, Wiley urges that the question whether 'procedural' conditions to arbitration have been met must be decided by the court and not the arbitrator." (*Id.* at pp. 555-556, fns. omitted.)

The Court of Appeals had taken the position that so-called issues of "procedural arbitrability" were for the arbitrator, not the court, to resolve. (*Livingston v. John Wiley & Sons, Inc.*, *supra*, 313 F.2d at pp. 60-64.) Here is the United State Supreme Court's more subtle assessment as to who decides issues concerning procedural prerequisites to arbitration: "We think that labor disputes of the kind involved here cannot be broken down so easily into their 'substantive' and 'procedural' aspects. Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it. In this case, for example, the Union argues that Wiley's consistent refusal to recognize the Union's representative status after the merger made it 'utterly futile--and a little bit ridiculous to follow the grievance steps as set forth in the contract.' [Citation.] In addition, the Union argues that time limitations in the grievance procedure are not

17

controlling because Wiley's violations of the bargaining agreement were 'continuing.' These arguments in response to Wiley's 'procedural' claim are meaningless unless set in the background of the merger and the negotiations surrounding it." (*John Wiley*, *supra*, 376 U.S. at pp. 556-557.)

The high court concluded the issue of whether there had been union noncompliance with the grievance procedures was inextricably caught up in the arbitration's merits. The United States Supreme Court explained: "Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration. In this case, one's view of the Union's responses to Wiley's 'procedural' arguments depends to a large extent on how one answers questions bearing on the basic issue, the effect of the merger; e.g., whether or not the merger was a possibility considered by Interscience and the Union during the negotiation of the contract. It would be a curious rule which required that intertwined issues of 'substance' and 'procedure' growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result." (*John Wiley*, *supra*, 376 U.S. at p. 557.) On other occasions, the high court has held that certain issues concerning compliance with procedural prerequisites and timeliness of an arbitration demand are for an arbitrator to decide. (See *BG Group PLC v. Republic of Argentina*, *supra*, 573 U.S.at p. __ [134 S.Ct. at p. 1207] ["courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration"]; *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* (2010) 559 U.S. 662, 685 [citing *John Wiley* as holding that procedural questions which grow out of the dispute and bear on its final disposition are presumptively for the arbitrator, to decide]; *Howsam, supra,* 537 U.S. at p. 84 [characterizing the holding in *John Wiley* as "that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are

18

prerequisites to arbitration"].)  Defendant relies upon the foregoing analysis in *John Wiley* asserting the question of whether there is an obligation to arbitrate this dispute *at all* must be resolved by the arbitrator.

We respectfully disagree.  In *John Wiley*, the United States Supreme Court held the issue of whether the dispute must be arbitrated is decided by the court.  (*John Wiley*, *supra*, 376 U.S. at pp. 544-551.)  Here, as we have explained, defendant cannot compel plaintiffs to arbitrate anything--there is no arbitration agreement between them.  The trial court correctly ruled that is an issue for the judicial branch.  If there was an enforceable arbitration agreement, then the *John Wiley* decision may be pertinent in terms of so-called procedural arbitrability issues.  Depending on the circumstances, those could be matters for the arbitrator.  Here, a court must deny the motion to compel arbitration.  Under these circumstances, as there is no enforceable arbitration agreement, the procedural arbitrability issues addressed in *John Wiley*, *supra*, 376 U.S. at pages 555-559 become irrelevant.  (See *United Paperworkers Int'l Union v. Misco, Inc., supra*, 484 U.S. at p. 40 ["when the subject matter of a dispute is arbitrable, 'procedural' questions which grow out of the dispute and bear on its final disposition are to be left for the arbitrator."].)

Finally, defendant relies upon our recent discussion in *Hong v. CJV America Holdings, Inc.* (2013) 222 Cal.App.4th 240, 254 (*Hong*).  In *Hong*, we held the court, not the arbitrator, decides whether a party to an arbitration agreement has waived the right to arbitrate by litigating in a judicial forum.  (*Id*. at pp. 243, 258.)  *Hong* has nothing to do with our case.

In *Hong*, we described the analysis appearing in *Howsam*, *supra*, 537 U.S. at page 84 concerning *John Wiley*.  In that discussion, we explained:  "In the next paragraph of *Howsam,* the high court identified other gateway issues which an arbitrator decides.  The high court explained the phrase 'question of arbitrability' is inapplicable in circumstances where parties would likely expect that an arbitrator would decide the gateway matter. *For example, a dispute's procedural question which bears '"on its final disposition"' is presumptively for resolution by an arbitrator.*  [Citation.]  As an example of an issue reserved for the arbitrator, the high court cited *John Wiley & Sons, Inc. v. Livingston,*

19

*supra,* 376 U.S. at page 557 . . . . (*Howsam, supra,* 537 U.S. at p. 84.) *John Wiley* held an arbitrator should decide whether the first two steps of a grievance procedure, which were prerequisites to arbitration, had been completed. (*John Wiley, supra,* 376 U.S. at pp. 556-558.) In *Howsam,* after discussing the holding in *John Wiley,* the high court stated: 'So, too, the presumption is that the arbitrator should decide "allegations of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital, supra,* at 24-25.) . . . .'" (*Hong*, *supra*, 222 Cal.App.4th at p. 254; italics added.) As can be noted, in *Hong*, we were merely discussing how the high court in *Howsam* described *John Wiley*. More to the point, we made it clear procedural issues which bear on the final disposition of the dispute are reserved for an arbitrator. So it is clear, nothing in *Hong* stands for the proposition that when a procedural issue is unrelated to the ultimate disposition of a dispute the arbitrator decides substantive arbitrability. *John Wiley* never said that and neither did we in *Hong* nor do we now.

Under federal common law applicable to the enforcement of collective bargaining agreements, the trial court correctly denied the motion to compel arbitration. And under the same federal common law, we are compelled to affirm the trial court's order. We need not resolve the other issues presented by the parties. Nor do we resolve any question concerning language in the collective bargaining agreement that bars suit against defendant unless there has been compliance with the grievance procedures. All we are holding is that the trial court correctly refused to order plaintiffs to arbitrate the claims in their complaint.

IV.  DISPOSITION


The August 26, 2013 order denying the motion to compel arbitration is affirmed. Plaintiffs, Kurt Knutsson and Woojivas, Incorporated, are awarded their appeal costs from defendant, KTLA, LLC.

**CERTIFIED FOR PUBLICATION**



TURNER, P. J.



We concur:



MOSK, J.



KRIEGLER, J.



21