# IN THE SUPREME COURT OF CALIFORNIA

GEORGE MELENDEZ et al.,
Plaintiffs and Respondents,

v.

SAN FRANCISCO BASEBALL ASSOCIATES LLC,
Defendant and Appellant.

S245607

First Appellate District, Division Three
A149482

San Francisco City and County Superior Court
CGC-13-530672, CGC-15-549146

_____

April 25, 2019

Justice Chin authored the opinion of the court, in which Chief
Justice Cantil-Sakauye and Justices Corrigan, Liu, Cuéllar,
Kruger, and Groban concurred.

_____

MELENDEZ  v. SAN FRANCISCO BASEBALL ASSOCIATES LLC
S245607


Opinion of the Court by Chin, J.


Under California's labor laws, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." (Lab. Code, § 201, subd. (a).)  Plaintiffs, security guards at what used to be named AT&T Park in San Francisco and is now named Oracle Park (the park), are suing San Francisco Baseball Associates LLC (the Giants) for allegedly violating this provision.  They claim they are discharged after every Giants homestand, at the end of the baseball season, and after other events at the park, and they are entitled under Labor Code section 201 to receive their unpaid wages immediately after each such discharge.  The Giants deny that the security guards are discharged on those occasions. They contend that Labor Code section 204, which generally requires semimonthly payment of employees' wages, applies to the guards.

The merits of this action are not now before us.  Rather, we must consider the Giants' contention that this lawsuit requires interpretation of the collective bargaining agreement (hereafter sometimes CBA) that the guards' union has entered into with the Giants.  If so, this lawsuit is preempted under federal law and must be submitted to arbitration.  (See, e.g., *Livadas v. Bradshaw* (1994) 512 U.S. 107 (*Livadas*).)

We conclude that, although the agreement between the union and the Giants may be *relevant* to this lawsuit and may

need to be consulted to resolve it, the parties' dispute turns on an interpretation of state law — namely, the meaning of "discharge" under Labor Code section 201 — rather than an interpretation of the agreement itself. Because no party has identified any provision of the agreement whose meaning is uncertain and that must be interpreted to resolve plaintiffs' claim, this lawsuit is not preempted and state courts may decide it on the merits. We reverse the judgment of the Court of Appeal, which concluded otherwise.

## I. FACTUAL AND PROCEDURAL HISTORY

We draw these facts, which are generally undisputed, primarily from the Court of Appeal opinion. (*Melendez v. San Francisco Baseball Associates LLC* (2017) 16 Cal.App.5th 339 (*Melendez*).)

George Melendez, a security guard at the park, is the lead plaintiff in this putative class action against the Giants. He "contends that he and other security guards were employed 'intermittingly' for specific job assignments (baseball games or other events) and were discharged 'at the end of a homestand, at the end of a baseball season, at the end of an inter-season event like a fan fest, college football game, a concert, a series of shows, or other events,' and that therefore under Labor Code section 201 [they] were entitled to but did not receive immediate payment of their final wages upon each such 'discharge.'" (*Melendez*, *supra*, 16 Cal.App.5th at p. 341.) Plaintiffs seek to recover penalties under Labor Code section 203 for the Giants' failure to pay them immediately after each such discharge.

The Giants contend that the "security guards are not intermittent employees but are 'year-round employees who remain employed with the Giants until they resign or are

terminated pursuant to the CBA.' " (*Melendez*, *supra*, 16 Cal.App.5th at p. 341.) To support this contention, they cite provisions of the agreement entered into between the Giants and the union that represents the security guards, the Service Employees International Union, United Services Workers West of San Francisco. (*Ibid*.)

As relevant here, the Giants moved to compel arbitration, arguing that the action is preempted by the Labor Management Relations Act of 1947. The trial court denied the motion. It "held that resolution of the controversy does not require interpretation of the CBA, but simply a determination of whether the security guards are discharged within the meaning of Labor Code section 201 at the conclusion of an event or series of baseball games." (*Melendez, supra*, 16 Cal.App. 5th at pp. 345-346.) The Giants appealed. (See Code Civ. Proc., § 1294, subd. (a) [an aggrieved party may appeal from "[a]n order dismissing or denying a petition to compel arbitration"].)

The Court of Appeal agreed with the Giants and reversed the order denying the motion to compel arbitration. It explained that, "[a]lthough no provision of the CBA provides an explicit answer, the duration of the employment relationship must be derived from what is implicit in the agreement." (*Melendez, supra*, 16 Cal.App.5th at p. 346.) It cited numerous provisions of the agreement that it believed must be interpreted to resolve this controversy: "There are numerous provisions from which inferences may logically be drawn. The classification of employees is based on the number of hours worked in a year, itself suggesting that employment is considered to continue beyond the conclusion of each event. Continued classification as a 'regular' employee requires at least 1,700 hours of work in a year. 'All employees shall be probationary employees for their

first five hundred (500) hours of work with the Giants.' Employees rise to 'senior' and 'super senior' status by working a minimum of 300 hours each year for the last five or 10 years, hardly possible if each event is deemed a separate employment. . . . [T]he CBA provides that 'All new applicants for employment as security personnel shall be subject to prehire drug screening and background investigation'; the language seems to imply that such screening and investigation will occur only once prior to the start of a single employment, and practice under the agreement confirms this interpretation. The specification of holidays in the CBA certainly implies yearlong employment. And under the CBA, the Giants have the right to discharge an employee only for cause. Other provisions may also support inferences as to the intended term of employment." (*Id*. at pp. 346-347.)

We granted plaintiffs' petition for review limited to the question of whether this action is preempted because it requires interpretation of a collective bargaining agreement.

## II. DISCUSSION

Section 301(a) of the Labor Management Relations Act of 1947 (29 U.S.C. § 185(a)) (hereafter section 301(a)) provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (See *Lingle v. Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399, 403 (*Lingle*).) "Courts typically refer to the statutory provisions at issue as 'section 301(a)' rather than by

citation to the United States Code." (*Knutsson v. KTLA, LLC* (2014) 228 Cal.App.4th 1118, 1126.)

"In a series of opinions, the Supreme Court concluded that § 301's jurisdictional grant required the 'complete preemption' of state law claims brought to enforce collective bargaining agreements." (*Balcorta v. Twentieth Century-Fox Film Corp.* (9th Cir. 2000) 208 F.3d 1102, 1107 (*Balcorta*).) The main policies behind this preemption rule are to "ensure nationwide uniformity with respect to the interpretation of collective bargaining agreements and preserve arbitration as the primary means of resolving disputes over the meaning of collective bargaining agreements." (*Sciborski v. Pacific Bell Directory* (2012) 205 Cal.App.4th 1152, 1163 (*Sciborski*), citing *Lingle*, *supra*, 486 U.S. at p. 404, *Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 211, 219 (*Allis-Chalmers*).)

After reviewing the high court opinions that developed the preemption rule, the *Balcorta* court explained that "[a]lthough the language of § 301 is limited to '[s]uits for violation of contracts,' courts have concluded that, in order to give the proper range to § 301's policies of promoting arbitration and the uniform interpretation of collective bargaining agreement provisions, § 301 'complete preemption' must be construed to cover 'most state-law actions that require interpretation of labor agreements.' [Citations.] One reason for expanding complete preemption beyond the textual confines of § 301 is that any claim the resolution of which requires the interpretation of a collective bargaining agreement presents some risk to the policy of uniformity if state law principles are employed in that interpretation, even if the claim is not one for breach of contract. [Citing *Lingle*, *supra*, 486 U.S. at pp. 405-406, *Livadas*, *supra*, 512 U.S. at pp. 121-123.] Moreover, extending complete

preemption to cover claims involving interpretation of collective bargaining agreements promotes the federal policy favoring arbitration of labor disputes . . . .” (*Balcorta, supra,* 208 F.3d at p. 1108, fn. omitted.)

Critically, *Balcorta* also explained that “[t]here is another strand to this aspect of federal labor law, however. Despite the breadth of § 301 complete preemption, ‘not every claim which requires a court to refer to the language of a labor-management agreement is necessarily preempted.’ [Citation.] In order to help preserve state authority in areas involving minimum labor standards, the Supreme Court has distinguished between claims that require interpretation or construction of a labor agreement and those that require a court simply to ‘look at’ the agreement. See *Livadas, supra,* 512 U.S. at 123-126, 124, 114 S.Ct. 2068 (“[W]hen the meaning of contract terms is not subject to dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.”). We have stressed that, in the context of § 301 complete preemption, the term ‘interpret’ is defined narrowly — it means something more than ‘consider,’ ‘refer to,’ or ‘apply.’ ” (*Balcorta, supra,* 208 F.3d at p. 1108.) Moreover, “ ‘look[ing] to’ the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption.” (*Cramer v. Consolidated Freightways, Inc.* (9th Cir. 2001) 255 F.3d 683, 692 (en banc) (*Cramer*), citing *Livadas, supra,* 512 U.S. at p. 125.)

“Preemption does not arise when interpretation is required only by a defense. [Citing *Caterpillar Inc. v. Williams* (1987) 482 U.S. 386, 398-399, *Cramer, supra,* 255 F.3d at p. 690.] Preemption occurs when a claim cannot be resolved on the merits without choosing among competing interpretations of a

collective bargaining agreement and its application to the claim. The determination of whether a claim is preempted depends on the particular facts of each case." (*Sciborski, supra*, 205 Cal.App.4th at pp. 1164-1165.) "The primary point of reference in the preemption analysis is . . . not state law writ large . . . but the plaintiff's pleading." (*Alaska Airlines Inc. v. Schurke* (9th Cir. 2018) 898 F.3d 904, 923 (en banc) (*Alaska Airlines*).) The inquiry is not "into the merits of a claim; it is an inquiry into the claim's 'legal character' — whatever its merits — so as to ensure it is decided in the proper forum. . . . Our only job is to decide whether, as pleaded, the claim 'in this case is "independent" of the [CBA] in the sense of "independent" that matters for . . . preemption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.' " (*Id.* at p. 924.)

The high court has also said that preemption applies "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." (*Allis-Chalmers, supra*, 471 U.S. at p. 220.)

These concepts are not bright lines. " '[T]he line between reference to and interpretation of an agreement may be somewhat hazy' " (*Balcorta, supra*, 208 F.3d at p. 1108), and " '[s]ubstantial dependence' on a CBA is an inexact concept, turning on the specific facts of each case . . . ." (*Cramer, supra*, 255 F.3d at p. 691.) But "the totality of the policies underlying § 301 — promoting the arbitration of labor contract disputes, securing the uniform interpretation of labor contracts, and protecting the states' authority to enact minimum labor standards — guides our understanding of what constitutes 'interpretation.' " (*Balcorta*, at pp. 1108-1109.)

As an overarching principle, the high court has also "emphasized that 'pre-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State.' " (*Lingle, supra*, 486 U.S. at p. 412.) Although a policy exists in ensuring uniformity of interpretation of collective bargaining agreements, no such policy exists in favor of uniformity of state labor standards. Federal law "does *not* provide for, nor does it manifest any interest in, national or systemwide uniformity in substantive labor rights." (*Alaska Airlines, supra*, 898 F.3d at p. 919.)

*Sciborski* summarized the analytical process a court should use to apply these principles. "Under section 301 preemption analysis, it is helpful to apply a two-part test to determine whether a claim is preempted. First, the court should evaluate whether the claim arises from independent state law or from the collective bargaining agreement. If the claim arises from the collective bargaining agreement, the claim is preempted as a matter of law. [Citation.] However, if the claim arises from independent state law, the court must then proceed to the second step. In this step, the court determines whether the claim requires 'interpretation or construction of a labor agreement,' or whether a collective bargaining agreement will merely be 'reference[d]' in the litigation. [Citations.] A state law claim is preempted if a court must *interpret* a disputed provision of the collective bargaining agreement to determine whether the plaintiff's state law claim has merit." (*Sciborski, supra*, 205 Cal.App.4th at p. 1164; see *Kobald v. Good Samaritan Regional Medical Center* (9th Cir. 2016) 832 F.3d 1024, 1032-1033 [similar].) "At this second step of the analysis, 'claims are only preempted to the extent there is an active dispute over "the meaning of contract terms." ' " (*Curtis v. Irwin*

*Industries, Inc.* (9th Cir. 2019) 913 F.3d 1146, 1153, quoting *Alaska Airlines, supra,* 898 F.3d at p. 921; see *McCray v. Marriott Hotel Services, Inc.* (9th Cir. 2018) 902 F.3d 1005, 1013 [a "speculative possibility" that a collective bargaining agreement dispute may arise later in the course of litigation will not preempt a state law claim when none of the collective bargaining agreement's terms are presently in dispute].)

The first step in this analytical process is easy in this case. Plaintiffs' claim arises solely from independent state law — Labor Code section 201 — and is not based on the collective bargaining agreement.

Because the difference between *interpreting* and merely *referencing* a collective bargaining agreement is inherently " 'hazy' " (*Balcorta, supra,* 208 F.3d at p. 1108), the second step is more difficult. But, bearing in mind that preemption should not be lightly inferred because establishing minimum labor standards comes within a state's traditional police power, we conclude this lawsuit is not preempted. The parties' dispute turns on an interpretation of California's independent labor laws, not on an interpretation of the collective bargaining agreement.

As noted, Labor Code section 201, subdivision (a), provides, "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." In *Smith v. Superior Court* (2006) 39 Cal.4th 77 (*Smith*), we construed the word "discharge" in this statute. There, L'Oreal USA, Inc. hired the plaintiff to be a "hair model" working for a single day. At the end of that day, the employment relationship ended. But L'Oreal failed to pay her for more than two months. She sued, claiming a violation of Labor Code

section 201. Because the employment relationship was voluntarily terminated, L'Oreal argued she was not discharged under the statute. We stated the issue as "whether the discharge element of [Labor Code sections 201 and 203] requires an involuntary termination from an ongoing employment relationship, such as when an employer fires an employee, or whether this element also may be met when an employer releases an employee after completion of a specific job assignment or time duration for which the employee was hired." (*Smith,* at p. 81.) We concluded that "the statutory element contemplates both types of employment terminations." (*Ibid.*)

In reaching this conclusion, we noted that a "commonly understood meaning of 'discharge' includes the action of an employer who, having hired an employee to work on a particular job or for a specific term of service, formally releases the employee and ends the employment relationship at the point the job or service term is deemed complete." (*Smith, supra,* 39 Cal.4th at p. 84.) We held that "discharge" in this context includes this commonly understood meaning. (*Id.* at p. 90.)

The parties debate at length how *Smith, supra,* 39 Cal.4th 77, applies here. The Giants argue that "[a]n employee cannot be simultaneously discharged under statute while continuing to remain continuously and gainfully employed by contractual agreement." They contend that "[t]his is a case about *which* Labor Code protections apply." In their view, Labor Code section 204 — which applies to wages not governed by other provisions such as Labor Code section 201, and which requires semimonthly wage payments and places strict limits on the time that may elapse between performance of labor and payment for that labor — governs security guards. They also rely on a declaration by the Giants' senior director of security explaining

the employment process that, they contend, shows plaintiffs are not continually discharged. Plaintiffs argue that they are "temporarily laid off" every time a specific job assignment ends, and such layoffs are discharges within the meaning of Labor Code section 201. They are willing to concede that, by the terms of the collective bargaining agreement, their employment relationship with the Giants is a continuing one. But they contend that "[e]ven if the CBA contained an undisputed term providing that security guards are employed for life, the layoffs they endure would still trigger the employer obligations contained in Labor Code section 201." The parties also discuss the legislative history behind the statute and the meaning and significance of interpretations of it by the Division of Labor Standards Enforcement.

These are credible arguments, and they will have to be considered when the trial court resolves the merits of this lawsuit on remand. But they are arguments concerning the meaning of "discharge" under Labor Code section 201, not concerning the meaning of the collective bargaining agreement. The parties have pointed us to no disagreement concerning the meaning of any provision of the agreement.

Closely on point is *Balcorta*, *supra*, 208 F.3d 1102. In that case, the plaintiff, an electrical rigger in the film industry, "worked several short-term 'calls'" for Twentieth Century Fox Film Corporation. (*Id.* at p. 1104.) He sued the corporation, claiming a violation of Labor Code former section 201.5, which, he alleged, required him to be paid within 24 hours of each call. As here, the reviewing court had to decide whether the lawsuit was preempted under section 301(a). The court held it was not.

*Balcorta* concluded that the collective bargaining agreement in that case had to be consulted but not interpreted. "Although the provisions do detail fairly complicated procedures and contain a hefty dose of industry jargon, their meaning is neither uncertain nor ambiguous. A court may be required to read and apply these provisions in order to determine whether an employee was discharged from his 'call' at the end of his shift, but no interpretation of the provisions would be necessary." (*Balcorta, supra*, 208 F.3d at pp. 1109-1110.) "[D]etermining whether Balcorta was discharged does not require a court to interpret the collective bargaining agreement . . . , and thus does not render Balcorta's claims subject to complete preemption." (*Id*. at p. 1110.)

*Balcorta* also explained that labor law rights such as that under Labor Code former section 201.5, are not negotiable and that section "301 does not permit parties to waive, in a collective bargaining agreement, nonnegotiable state rights . . . ." (*Balcorta, supra*, 208 F.3d at p. 1111; see Lab. Code, § 219 ["no provision of this article can in any way be contravened or set aside by a private agreement, whether written, oral, or implied"].) Accordingly, the collective bargaining agreement did not have to be interpreted to determine whether it waived the right to timely payment of wages under state law. (*Balcorta,* at pp. 1111-1112.)

Although this case involves Labor Code section 201, not Labor Code former section 201.5, we believe the same result applies. The collective bargaining agreement must be consulted or referenced, but not interpreted. Nor is resolution of the state law claim "substantially dependent upon analysis of the terms of" the collective bargaining agreement. (*Allis-Chalmers*, *supra*,

471 U.S. at p. 220.) Instead, Labor Code section 201 must be interpreted.

The Court of Appeal in this case concluded that plaintiffs' claim was preempted based on "inferences . . . drawn" from several provisions of the collective bargaining agreement. (*Melendez, supra*, 16 Cal.App.5th at p. 346.) It cited provisions that define seniority and wage levels, pre-hire drug screening and background investigation, and annual holidays. Those provisions may be *relevant*, but none directly address whether the Giants, at the end of each event or series of home games, "discharge" plaintiffs pursuant to Labor Code section 201. As the Court of Appeal recognized, no provision of the agreement "provides an explicit answer." (*Melendez*, at p. 346.) Nor do those provisions require *interpretation* in the narrow sense in which that word is used for preemption purposes. The parties have not identified any provision of the collective bargaining agreement whose meaning is "ambiguous" (*Balcorta, supra*, 208 F.3d at p. 1109) or subject to "active dispute." (*Alaska Airlines, supra*, 898 F.3d at p. 921.) Indeed, nothing in the agreement addresses the *timing* of wage payments, which shows that plaintiffs' complaint is aimed at an issue separate from the benefits bargained for in the agreement.

Our finding that the action is not preempted is consistent with the policies underlying section 301(a). Allowing a state court to interpret Labor Code section 201 does not threaten the policies of "promoting the arbitration of labor contract disputes" or "securing the uniform interpretation of labor contracts." (*Balcorta, supra*, 208 F.3d at pp. 1108-1109.) But, importantly, it does "protect[] the states' authority to enact minimum labor standards." (*Id*. at p. 1109.) It is up to state courts, not an

arbitrator, to interpret state labor law standards applicable to all workers.

We express no view on the parties' interpretations of Labor Code section 201 or the ultimate merits of this lawsuit, which are not before us in this appeal from the denial of the motion to compel arbitration, and on which no court has yet ruled. We hold only that section 301(a) does not preempt this lawsuit. The merits will have to be resolved when the matter is remanded to the trial court.

### III. CONCLUSION

The trial court correctly denied the motion to compel arbitration. Accordingly, we reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.

**CHIN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Melendez v. San Francisco Baseball Associates LLC

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 16 Cal.App.5th 339
**Rehearing Granted**

_____

**Opinion No.** S245607
**Date Filed:** April 25, 2019

_____

**Court:** Superior
**County:** San Francisco
**Judge:** Curtis E. A. Karnow

_____

**Counsel:**

Sheppard, Mullin, Richter & Hampton, Nancy Pritikin, Babak Yousefzadeh, Karin Dougan Vogel and Brian S. Fong for Defendant and Appellant.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, Jason W. Kearnaghan, Daniel J. McQueen and Ryan J. Krueger for Los Angeles Dodgers LLC, Athletics Investment Group LLC, Padres L.P., and San Jose Arena Management, LLC, as Amici Curiae on behalf of Defendant and Appellant.

Sahag Majarian II; Moss Bollinger and Dennis F. Moss for Plaintiffs and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Karin Dougan Vogel
Sheppard, Mullin, Richter & Hampton
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111-4109
(415) 434-9100

Dennis F. Moss
Moss Bollinger
15300 Ventura Boulevard, Suite 207
Sherman Oaks, CA  91403
(310) 773-0323