Filed 8/24/21  Medina v. United Airlines CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JOSE MEDINA | B293677 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC624742) |
| v. | |
| UNITED AIRLINES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Reversed.

Diversity Law Group, Larry W. Lee; Law Offices of Choi & Associates, Edward W. Choi; Polaris Law Group and William L. Marder for Plaintiff and Appellant.

O'Meleveny & Myers, Adam P. KohSweeney and Susannah K. Howard for Defendant and Respondent.

_____

Jose Medina appeals from a summary judgment granted in favor of United Airlines, Inc. (United) on his Private Attorneys General Act (PAGA; § 2698 et seq.) action which seeks solely civil penalties for United's alleged violations of the meal break requirements contained within the California Labor Code.

The trial court ruled the action was preempted by the Railway Labor Act (RLA; 45 U.S.C. § 151 et seq.) because adjudicating Medina's claim would require the court to interpret the parties' collective bargaining agreement. However, preemption under the RLA is narrowly construed under both California and Supreme Court precedent and is required only if the state law claim cannot be resolved without interpreting that agreement.

Medina is seeking only penalties on behalf of the state, not unpaid wages or other damages that might implicate the terms of United's collective bargaining agreement. Accordingly, interpretation of that agreement is unnecessary to determine whether United violated California's Labor Code.

The PAGA serves an important supplementary role as an enforcement tool under the Labor Code to augment the limited enforcement capabilities of the state. Preemption of employment standards within the traditional police power of the state should not be lightly inferred.

Accordingly, we reverse.

## FACTUAL AND PROCEDURAL HISTORY[1]

Medina has been employed as a mechanic at Los Angeles International Airport for United and Continental Airlines

---

[1] "Our factual and procedural background is derived in part from undisputed aspects of the trial court's order and the parties'

2

(acquired by United in 2010) since January 1989.  Mechanics are subdivided into line technicians or base technicians, among other categories.  Line technicians such as Medina perform maintenance on live aircraft—i.e., aircraft currently in service and arriving and/or departing from a United station.  Their duties include responding to mechanical concerns raised by the aircraft's flight crew and ensuring that everything on the minimum equipment list is in working order before the aircraft takes off.

## A.    The Collective Bargaining Agreements

Due to Medina's long-standing employment, first with Continental Airlines and then United, the terms and conditions of his employment are governed by two separate collective bargaining agreements negotiated and approved under the RLA.[2]  The relevant meal break provisions are identical and, for ease of reference, are hereafter referred to collectively as the "Collective Bargaining Agreement" or "CBA."[3]

---

filings."  (*Western Bagel Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 649, 655, fn. 2.)

[2] The RLA regulates labor relations between common interstate air carriers and their employees.  (45 U.S.C. § 181; *DeTomaso v. Pan American World Airways, Inc.* (1987) 43 Cal.3d 517, 525.)

[3] Mechanics such as Medina, who worked for Continental Airlines before the merger in 2010, are referred to as "heritage Continental mechanics," while those who worked for United before the merger are referred to as "heritage United mechanics." The current governing meal break provisions were entered into between United and International Brotherhood of Teamsters (IBT), the union that represents United's U.S.-based mechanics, effective December 5, 2016.  Prior to that date, heritage

3

Under the Collective Bargaining Agreement, a normal work day is eight hours of work, with a 30-minute unpaid meal break and two 10-minute rest breaks. If a mechanic works two or more hours of overtime, the employee "shall be afforded an additional thirty (30) minute paid meal period, or pay in lieu thereof." If the employee works four hours of overtime, "an additional thirty (30) minute paid meal period, or pay in lieu thereof, will be allowed within the following hour." "When not afforded the aforementioned meal period(s) an employee may, subject to the needs of service, forgo any additional pay and be allowed to leave work early with pay at the applicable overtime rate."

## B. California Meal Break Requirements

Labor Code section 226.7, subdivision (b),[4] prohibits an employer from requiring "an employee to work during a meal or rest or recovery period mandated pursuant to an applicable . . . order of the Industrial Welfare Commission." In turn, Industrial Welfare Commission (IWC) Wage Order No. 9-2001, provides: "An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived." (Wage Order No. 9-2001, § 11(B) https://www.dir.ca.gov/IWC/IWCArticle09.pdf, as of 8/23/2021.)

Wage Order No. 9-2001 further provides that "[u]nless the employee is relieved of all duty during a 30[-]minute meal period,

Continental mechanics, such as Medina, were covered by a CBA between the IBT and Continental Airlines.

[4] Undesignated statutory citations are to the Labor Code.

the meal period shall be considered an 'on duty' meal period and counted as time worked." (*Id.*, § 11(C)). "An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal is agreed to." (*Ibid.*) "The written agreement shall state that the employee may, in writing, revoke the agreement at any time." (*Ibid.*)

## C.    The Complaint

On June 22, 2016, Medina filed a representative action under the PAGA, premised on a single claim:  United is violating California meal break law by "failing to provide a second meal break" to "[a]ll current and former California mechanic employees . . . who worked any shifts of over 10 hours from February 9, 2015 through the present."  The complaint alleges that United engages in "willful violations of the California Labor Code by creating and maintaining policies, practices and customs that knowingly deny employees" their meal break rights.  Medina seeks penalties pursuant to the PAGA (§ 2699, subd. (a)), for violations of section 226.7.

## D.    The Summary Judgment Motion

On November 22, 2017, United filed a motion for summary judgment, arguing Medina's action was preempted by the RLA minor dispute preemption because adjudicating his claim would require the court to interpret provisions of the mechanics' CBAs. United further argued that Medina's action was preempted by the Airline Deregulation Act (49 U.S.C. § 41713) and barred by the Dormant Commerce Clause.  Finally, United argued that it complied with California law because the CBAs' provisions provide a second meal beak for employees who work over 10 hours.

On September 24, 2018, the trial court granted United's motion for summary judgment on the sole ground that the action was preempted by the RLA.[5]

On November 2, 2018, Medina filed his timely notice of appeal.

## DISCUSSION

### A.  Standard of Review

"The court's order granting summary judgment and involving an issue of preemption requires us to undertake a de novo review." (*Department of Industrial Relations v. Nielsen Construction Co.* (1996) 51 Cal.App.4th 1016, 1024; see also *Valencia v. SCIS Air Security Corp.* (2015) 241 Cal.App.4th 377, 383.)

### B.  PAGA Suits

The Legislature enacted the PAGA in 2003 after deciding that lagging labor law enforcement resources made additional private enforcement necessary " 'to achieve maximum compliance with state labor laws.' " (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 379 (*Iskanian*), quoting *Arias v. Superior Court* (2009) 46 Cal.4th 969, 980.)

The PAGA empowers employees to sue on behalf of themselves and other aggrieved employees to recover civil penalties previously recoverable only by the Labor Commissioner. (See § 2699, subd. (a); *Iskanian*, *supra*, 59 Cal.4th at p. 381.)  The

---

[5] The court rejected United's arguments based on the Airline Deregulation Act and Dormant Commerce Clause and further found there was "a dispute of material fact regarding [United's] compliance with California's meal break requirements."

PAGA also creates new civil penalties, equally enforceable by aggrieved employees, for most other Labor Code violations that previously did not carry such penalties. (§ 2699, subds. (f), (g)(1); *Iskanian*, *supra*, at pp. 379-380.)

"The purpose of the PAGA is not to recover damages or restitution, but to create a means of 'deputizing' citizens as private attorneys general to enforce the Labor Code." (*Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 501.) Seventy-five percent of any penalties collected by a PAGA representative are distributed to the Labor and Workforce Development Agency, while the remaining 25 percent are distributed to the aggrieved employees. (§ 2699, subd. (i).) Statutory class action requirements are not applicable. (*Arias v. Superior Court, supra*, 46 Cal.4th at p. 975.)

## C.    RLA and Preemption

### 1.    *The RLA*

Congress enacted the RLA " 'to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes.' " (*Espinal v. Northwest Airlines* (9th Cir. 1996) 90 F.3d 1452, 1456, quoting *Hawaiian Airlines, Inc. v. Norris* (1994) 512 U.S. 246, 252 (*Hawaiian Airlines*.)

The RLA requires mandatory arbitration for two classes of disputes: " 'major' disputes," which concern " 'the formation of collective bargaining agreements or efforts to secure them,' " and " 'minor' disputes", which " 'involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.' " (*Espinal v. Northwest Airlines, supra*, 90 F.3d at p. 1456, quoting *Hawaiian Airlines, supra*, 512 U.S. at

7

pp. 252-253).  Both major and minor disputes are preempted.[6]
(*Hawaiian Airlines, supra*, at pp. 252-254.)

Although the parties agree that Medina's claim cannot be considered a major dispute, United contends that it falls within the minor dispute category and must be resolved only through the RLA mechanisms.[7]

2.     *Minor Dispute Preemption*

In determining dispute preemption, the United States Supreme Court has instructed courts to employ the same criteria

---

[6] "In the RLA and [Labor-Management Relations Act section] 301 context, the 'purpose of Congress' is to protect the role of grievance and arbitration and of federal labor law in resolving CBA disputes, not to alter or displace state law labor rights." (*Alaska Airlines Inc. v. Schurke* (9th Cir. 2018) 898 F.3d 904, 926 (en banc) (*Alaska Airlines*); see also *Melendez v. San Francisco Baseball Associates LLC* (2019) 7 Cal.5th 1, 9 (*Melendez*).)

[7] Medina's opening brief discusses the blanket exemptions contained within Wage Order No. 9-2001 in arguing that RLA preemption is not warranted.  Because United has not asserted any blanket exemptions either here or in the trial court, it contends that Medina "has waived any argument that the trial court erred in its application of RLA minor dispute preemption." However, United has fully briefed (and Medina has submitted a reply on) the question of RLA minor dispute preemption. Moreover, pursuant to the parties' stipulation, this court stayed proceedings in this matter pending the California Supreme Court's decision in *Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 743-748, which discusses the blanket wage order exemptions.  (See, e.g., *Gunther v. North Coast Cooperative, Inc.*, (N.D. Cal. June 19, 2020) 2020 WL 3394547, at p. *7.)  Under these circumstances, we do not deem the issue waived.  (*Jameson v. Desta* (2009) 179 Cal.App.4th 672, 674, fn. 1.)

used to determine preemption under the Labor-Management Relations Act (LMRA; 29 U.S.C. § 185). (*Hawaiian Airlines, supra*, 512 U.S. at p. 263; *Alaska Airlines*, *supra*, 898 F.3d at pp. 913-914, fn. 1.) The Ninth Circuit Court, in turn, has developed a two-part test for resolving RLA and LMRA preemption disputes, which California courts follow. (See *Melendez*, *supra*, 7 Cal.5th at pp. 9-13; *Sciborski v. Pacific Bell Directory* (2012) 205 Cal.App.4th 1152, 1164; *Alaska Airlines*, *supra*, at p. 920; *Burnside v. Kiewit Pac. Corp.* (9th Cir. 2007) 491 F.3d 1053, 1060.)

The first step in minor dispute preemption analysis requires the court to " 'evaluate whether the claim arises from independent state law or from the collective bargaining agreement. If the claim arises from the collective bargaining agreement, the claim is preempted as a matter of law.' " (*Melendez*, *supra*, 7 Cal.5th at p. 10.) If, as here, the claim does not so arise, the court must then determine whether the labor agreement claim nevertheless requires the " ' "interpretation or construction of a labor agreement." ' " (*Ibid.*) To this critical question we now turn.

We begin by pointing out that the term " ' "interpret" ' " in the context of RLA preemption " 'is defined narrowly—it means something more than "consider," "refer to," or "apply." ' " (*Melendez*, *supra*, 7 Cal.5th at p. 8.) Preemption is warranted only "when [the] resolution of a state law claim is 'substantially dependent' on analysis of a collective bargaining agreement, such as 'when pertinent principles of state law require[ ] construing the relevant collective-bargaining agreement.' " (*Valles v. Ivy Hill Corp.* (9th Cir. 2005) 410 F.3d 1071, 1081, citing *Lingle v. Norge Div. of Magic Chef, Inc.* (1988) 486 U.S. 399, 407, fn. 7; *Melendez*, *supra*, at p. 9.)

3.    *Narrow RLA Preemption Is Consistent With United States Supreme Court Precedent*

In *Hawaiian Airlines*, an aircraft mechanic was suspended after refusing to sign a maintenance record due to a perceived dangerous condition.  In grievance procedures, the hearing officer accepted the airline's argument that the employee had been insubordinate as defined under the collective bargaining agreement and was properly discharged.  (*Hawaiian Airlines, supra*, 512 U.S. at pp. 248-250.)

The employee filed a civil lawsuit in the Hawaii state court, alleging two wrongful discharge torts—discharge in violation of public policy and the Hawaii's Whistleblower Protection Act.  Although the trial court dismissed the state lawsuit as being preempted, the Supreme Court of Hawaii reversed.  (*Hawaiian Airlines, supra*, 512 U.S. at p. 251.)

The United States Supreme Court affirmed, explaining that "the CBA is not the 'only source' of [the employee's] right not to be discharged wrongfully.  In fact, the 'only source' of the right [the employee] asserts . . . is state tort law.  Wholly apart from any provision of the CBA, [the airline] had a state-law obligation not to fire [the employee] in violation of public policy or in retaliation for whistleblowing.  The parties' obligation under the RLA to arbitrate disputes arising out of the application or interpretation of the CBA did not relieve petitioners of this duty."  (*Hawaiian Airlines, supra*, 512 U.S. at p. 258.)

In *Lingle v. Norge Div. of Magic Chef, Inc., supra*, 486 U.S. 399, the United States Supreme Court held that a state law claim of retaliatory discharge for exercising state workers' compensation rights was not preempted because the dispute did not turn on the meaning of any terms in the collective bargaining agreement.  Whether the grievance could also have been filed and

arbitrated was deemed irrelevant: "[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement." (*Id.* at pp. 409-410, fn. omitted.)

The significance of *Hawaiian Airlines* and *Lingle* is that minor dispute RLA preemption is not warranted even if a bargaining agreement covers the same topic as the state law at issue—or, indeed, contains terms that may be subject to differing interpretations. Instead, preemption is required only if the state law claim *cannot* be resolved without interpreting that agreement.[8] (*Hawaiian Airlines*, *supra*, 512 U.S. at p. 262; *Lingle v. Norge Div. of Magic Chef, Inc.*, *supra*, 486 U.S. at pp. 408-410; see also *Balcorta v. Twentieth Century-Fox Film Corp.* (2000) 208 F.3d 1102, 1111 [deeming it irrelevant whether collective bargaining agreement terms were ambiguous on issue under litigation because "whether a violation has occurred is controlled only by the provisions of the state statute and does not turn on whether the payment was timely under the provisions of the collective bargaining agreement"].)

_____

[8] An example where interpretation of a bargaining agreement was unavoidable is *IBEW, AFL-CIO v. Hechler* (1987) 481 U.S. 851, where plaintiff brought a negligence claim under state common law against her own labor union, alleging breach of the duty to provide a safe workplace. The court held the claim was preempted because the plaintiff had expressly conceded that the " 'nature and scope of the duty of care owed [her] is determined by reference to the collective bargaining agreement.' " (*Id.* at pp. 861-862, fn. 5.)

11

**D.    Medina's PAGA Claim Is Not Preempted Under the RLA**

Medina's complaint alleges violations of section 226.7, and the applicable IWC orders, for "failing to provide a second meal break for each shift worked more than 10 hours." The complaint seeks "penalties pursuant to the PAGA, . . . § 2699[, subdivision] (a)." As pled, Medina's claims arise from California's Labor Code, not the Collective Bargaining Agreement. (*Melendez*, *supra*, 7 Cal.5th at p. 9 [" 'The primary point of reference . . . [is] the plaintiff's pleading' "]; *Alaska Airlines*, *supra*, 898 F.3d at p. 924 [same].)

In concluding that the CBA would need to be interpreted in order to adjudicate Medina's claim, the trial court pointed out that, under the CBA, a mechanic who "does not receive a meal period as required" "is entitled to one of two options" depending on the " 'needs of service.' " The court found that "[d]etermining compliance with IWC Wage Order [No.] 9-2001 would require the [c]ourt to analyze the CBA's term of what the appropriate *remedy* offered by [United] for the missed second meal period' was 'in conjunction with needs of service.' " (Italics added.)

In focusing on the remedy, the trial court relied on *Fitz-Gerald v. SkyWest, Inc.* (2007) 155 Cal.App.4th 411 (*Fitz-Gerald*), disapproved in part on other grounds in *People ex rel. Harris v. PAC Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 784, and similar cases. In *Fitz-Gerald*, the court pointed out that if the trial court found meal and rest break violations "it would have to determine whether the [flight attendant] was receiving flight pay or block time pay when the violation occurred" because Wage Order No. 9-2001 provides for one hour of pay "at the regular rate of compensation" for each violation. (*Fitz-Gerald*, *supra*, at p. 421.) Because the trial court would be unable to determine the

regular rate of compensation without interpreting the collective bargaining agreement, the claim was preempted. (*Id.* at pp. 421-422.)

The trial court erred both in focusing on the remedy and reliance on *Fitz-Gerald* and its progeny.[9] Medina's PAGA suit is limited to the recovery of PAGA civil penalties, not individual damages. United contends that Medina's "claim is no different" from those raised in cases like *Fitz-Gerald* and will therefore "involve the same interpretive issues." We disagree.

The California Supreme Court's decision in *Iskanian* makes clear that a *civil penalty* recovered under the PAGA is different from the *hour of pay* awarded for meal break violations under

---

[9] The vitality of *Fitz-Gerald* and other decisions that relied on or interpreted the RLA definitions prior to *Hawaiian Airlines* are in question. (See *Espinal v. Northwest Airlines*, *supra*, 90 F.3d at p. 1458, fn. 6 [noting opinions issued prior to *Hawaiian Airlines* were based "on the more expansive view of RLA preemption that has since been overruled by [*Hawaiian Airlines*]"; see also *Soldinger v. Northwest Airlines* (1996) 51 Cal.App.4th 345, 361, fn. 6 [noting same with regards to state opinions].) Moreover, recent decisions reject the blanket assertion that determining a plaintiff's "regular rate of pay" would require a court to interpret the collective bargaining agreement (see, e.g., *Meek v. SkyWest, Inc.* (2019) 2019 U.S. Dist. LEXIS 216017; *Toolajian v. Air Methods Corp.* (2019) 2019 U.S. Dist. LEXIS 236952), and United has not identified any provisions relating to United mechanics' "regular rate of pay" calculation that are ambiguous or in dispute. (*Alaska Airlines*, *supra*, 898 F.3d at p. 922 [preemption not warranted where a court needs only to refer to the CBA and apply its plain or undisputed language "to identify 'bargained-for wage rates' "].)

13

section 226.7, subdivision (c).[10] (*Iskanian*, *supra*, 59 Cal.4th at p. 381.) Whereas Medina may not seek recovery of the premium wages available under section 226.7, subdivision (c) in this PAGA action, he is capable of recovering the flat amount/per-violation civil penalties.[11] (See *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 185-186 [so stating]; see also *Kim v. Reins International California, Inc.,* (2020) 9 Cal.5th 73, 89.)

United urges that the parties' "practices" and "customs" are "part and parcel of analyzing the CBA," and that "RLA minor dispute preemption is not limited to situations where the written CBA must be interpreted." However, United cites no preemption case holding that an employer's "practice" or "custom" can, in and of itself, form the basis for preemption. Instead, the claims in the cases cited by United either directly arose out of the CBA (see *Consolidated Rail v. Railway Labor Exec. Ass'n* (1989) 491 U.S 299, 303), or required interpretation of CBA's written terms (see *Blackwell v. SkyWest Airlines, Inc.* (2008) 2008 WL 5103195 at

---

[10] The hour of pay awarded is known variously as a "premium wage" (see *Murphy v. Kenneth Cole Productions*, Inc. (2007) 40 Cal.4th 1094, 1108, 1114) or "statutory damages" provision (*Iskanian*, *supra*, 59 Cal.4th at p. 381).

[11] Because section 226.7 does not contain its own civil penalty provision for meal break violations, the penalty amounts under section 2699, subdivision (f)(2) ($100 for first violation, $200 for each thereafter) would apply. (*Home Depot U.S.A., Inc. v. Superior Court* (2010) 191 Cal.App.4th 210, 218; cf. *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1256 ["The failure to provide required meal and rest breaks is what triggers a violation of [§] 226.7" and the payment of the premium does not excuse the violation].)

14

p. *14 ["interpretative issues arise as to the proper calculation of meal and rest period penalties"].)

To hold that the parties' mere "practice" or "custom" could form the basis for preemption would contravene the Supreme Court's admonition that " 'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.' " (*Hawaiian Airlines, supra,* 512 U.S. at p. 261.)

In finding that a material dispute existed as to whether United did in fact comply with California law, the trial court commented that, regardless of whether "[United] has policies for meal breaks which comply with California law," this "does not establish it did not violate such policies."[12]

---

[12] United argued it was entitled to summary judgment because "the CBA provisions regarding meal breaks . . . complied with California meal break requirements." The court rejected this contention, identifying the following factual allegations as the bases for the material dispute: (1) "while employees are not scheduled for shifts of more than ten hours, . . . employees regularly work shifts more than ten hours and . . . are not provided a second meal break of at least 30 minutes"; (2) "[e]mployees [do] not clock in or out for meal breaks and there is no system to show the actual start or stop time of the meal break taken by the employee because . . . [the] timekeeping system is set up with an arbitrary meal break 'to automatically deduct 30 minutes from the employee's time' "; (3) "[United] employees are subject to call back during their meal breaks"; and (4) "[United] only pays a meal break premium when the request is made by the employee." The facts supporting these allegations arose from declarations and depositions, including those of persons deemed most knowledgeable on the subject. (See *Carrington v. Starbucks Corp.* (2018) 30 Cal.App.5th 504, 523-526 [the plaintiff's testimony and time records sufficient to

While the factfinder may " ' "consider," "refer to," or "apply" ' " some of the CBA provisions (*Melendez, supra,* 7 Cal.5th at p. 8), the determination of whether Medina and similar employees were provided their second meal breaks will turn on an interpretation of California law, not the CBA. (*Id.* at p. 9; *Balcorta v. Twentieth Century-Fox Film Corp., supra,* 208 F.3d at p. 1111 [stating "whether a violation has occurred is controlled only by the provisions of the state statute" not the provisions of the CBA].)

We pause here to note that Wage Order No. 9-2001 allows an employee to waive an off-duty meal if: (1) the "nature of the work" prevents the employee from being relieved of all duty; (2) the employee agrees to the on-duty meal period in writing; and (3) the written agreement provides that the employee may, in writing, revoke the agreement at any time. (Wage Order No. 9-2001, § 11(C)). While the CBA phrase "needs of service" may play a role in determining whether a waiver exists due to the "nature of the work" under Wage Order No. 9-2001, this interrelationship does not result in preemption because "[t]he nature of the work exception is an affirmative defense" (cf. *Lubin v. The Wackenhut Corp.* (2016) 5 Cal.App.5th 926, 943), and an affirmative defense cannot form the basis for preemption. (*Ehret v. WinCo Foods, LLC* (2018) 26 Cal.App.5th 1, 9, fn. 6 [even if CBA was ambiguous on question of whether employees waived meal breaks under circumstances permitted under California law, preemption

---

establish she suffered meal break violations; testimony of witness designated as most knowledgeable by the defendant and the plaintiff's expert statistician satisfied representative aspect of PAGA claim by demonstrating corporate practices resulted in numerous meal break violations].)

does not bar a claim if "a party raises a *defense* that requires a court to interpret or apply a collective bargaining agreement"]; see also *Caterpillar Inc. v. Williams* (1987) 482 U.S. 386, 398-399 [stating "the plaintiff is the master of the complaint," and that if the defendant could engineer "the forum in which the claim shall be litigated" based on the substance of his defense, "the plaintiff would be master of nothing"]; *Melendez, supra,* 7 Cal.5th at p. 9.)

Because United has failed to identify any CBA provisions that would warrant preemption, the trial court's ruling cannot be upheld. Our conclusion is consistent with the admonition that preemption of employment standards " ' "within the traditional police power of the [s]tate" ' " " ' "should not be lightly inferred" ' " (*Melendez, supra*, 7 Cal. 5th at p. 9), and the recognition that the PAGA was enacted to augment the limited enforcement capabilities of the state. (*Kim v. Reins International California, Inc., supra*, 9 Cal.5th at p. 86.; *Brown v. Ralphs Grocery Co., supra*, 197 Cal.App.4th at p. 501.)

These concerns have special importance where, as here, the representative plaintiff is seeking to enforce state labor laws on behalf of airplane mechanics who are responsible for ensuring the safety of passengers. (See *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 69 [noting that "delaying a meal period by even a few minutes may exacerbate risks associated with stress or fatigue, especially for workers who are on their feet most of the day or who perform manual labor"].)

E.  **Summary Judgment Is Not Warranted on the Other Grounds Rejected by the Trial Court**

United contends that the judgment should be affirmed on the other grounds rejected by the trial court. We disagree.

Preemption under the Airline Deregulation Act is unwarranted because meal and rest breaks do not " 'relate to' "

17

an "airline's 'price, route, or service' " (*Valencia v. SCIS Air Security Corp., supra*, 241 Cal.App.4th at p. 385; *Bernstein v. Virgin America, Inc.* (9th Cir. 2021) 990 F.3d 1157, 1167).

The Dormant Commerce Clause is not implicated because Medina and all represented employees worked exclusively in California during the relevant time frame.  (Cf. *Ward v. United Airlines, Inc.* (9th Cir. 2021) 986 F.3d 1234, 1239, 1241-1242.)

Even were we to accept United's assertion that the CBA is consistent with California law, such consistency would not establish that United did not actually violate the employees' meal break rights.  (Cf. *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 959-960.)  The trial court correctly determined that a material dispute of fact exists on that ultimate question based on the evidence before the court.

We therefore reverse the summary judgment.

## DISPOSITION

The judgment in favor of United is reversed.  Medina is awarded costs on appeal.

NOT TO BE PUBLISHED


CRANDALL, J.*


We concur:



CHANEY, J.                                  BENDIX, Acting P. J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.